IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHNNY LANDRUM, | § § | |
| Plaintiff, | § § | |
| v. | § § | 2:07-cv-495-WKW |
| DR. JOHN ALLEN JONES, et al., | § § § | |
| Defendants. | § | |

## BRIEF IN SUPPORT OF MOTION FOR REINSTATEMENT OF RECOMMENDATION OF DISMISSAL DATED JUNE 12, 2007

COMES NOW Defendant, John Allen Jones, III, M.D. and files this Brief in Support of his Motion for Reinstatement of Recommendation of Dismissal dated June 12, 2007.

### I. INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff, Johnny Landrum (AIS # 134871) (hereinafter "Plaintiff" or "Landrum"), is an inmate currently confined at Bibb County Correctional Facility located in Brent, Alabama. On January 22, 2007, Plaintiff commenced an action against Dr. Jones by the filing of a Complaint in the Circuit Court of Montgomery County, Alabama styled "Johnny Landrum v. Dr. John Allen Jones, III, et al.," Civil Action No.: CV-07-134. (See Ex. A to Doc. 1). Dr. Jones is an ophthalmologist in private practice with Drs. Jones & Jones, P.A. whose offices are located at Baptist Hospital in Montgomery, Alabama. (See Doc. 4). Dr. Jones contracts with Prison Health Services, Inc. ("PHS"), the company that contracts with the Alabama Department of Corrections ("ADOC") to provide healthcare to inmates at certain correctional facilities in the State of Alabama (including

Bibb) to provide medical care to certain inmates referred to him for treatment. (See Doc. 1). Plaintiff alleges that he was referred to Dr. Jones for treatment by "Dr. Whitley," Medical Director for Bibb County Correctional Facility for cataract treatment and surgery. (Id.) Landrum claims that Dr. Jones failed to perform cataract surgery in an appropriate manner in violation of his Eighth Amendment rights pursuant to the United States Constitution. (Id. at ¶¶ 3-4).

On June 5, 2007, Dr. Jones removed Plaintiff's Complaint to this Court. (Id.) On June 12th, Judge Walker entered a Recommendation that Plaintiff's claims against Dr. Jones be dismissed with prejudice prior to service in accordance with the directives of 28 U.S.C. § 1915A(b)(1). (See Doc. 2, Withdrawn). Specifically, the Court determined that Plaintiff's allegations against Dr. Jones pursuant to 42 U.S.C. § 1983 (citing violations of the Eighth Amendment to the United States Constitution) were due to be dismissed because Dr. Jones did not provide medical treatment to the Plaintiff as a person "acting under the color of state law" or as a "state actor." (Id.) On June 24th, Landrum filed an Objection to Judge Walker's Recommendation arguing, in part, that Dr. Jones is a "state actor" and, as such, is liable pursuant to § 1983 for those alleged injuries stemming from cataract surgery. (See Doc. 4).

On September 11th, Judge Walker withdrew her Recommendation of Dismissal and entered an Order directing Dr. Jones to provide the Court with a response advising whether he has entered into a contract with the ADOC or PHS to furnish medical treatment to state inmates.[1]

---

[1] A motion responding to this Court's Order is being filed contemporaneously.

## II. ARGUMENT

While it is not specifically enumerated within this Court's Order of September 11th, it appears that the Court seeks disclosure of Dr. Jones' contract with the ADOC and/or PHS to determine whether he may be deemed a "state actor" for purposes of § 1983. (See Doc. 10). Dr. Jones is not a "state actor." As such, Judge Walker's Recommendation of Dismissal was appropriate and is due to be reinstated.

42 U.S.C. § 1983 provides a mechanism through which an individual may bring a civil action against any person who, while acting under color of state law, subjects any citizen to the deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States. See Greffey v. Ala. Dep't. of Corrections, 996 F. Supp. 1368 (D. Ala. 1998). Specifically,

> A person "subjects" another to the deprivation of a constitutional right, with the meaning of § 1983, if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.

Id. at 1376. The statute is designed to "defer state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Id. citing Wyatt v. Cole, 504 U.S. 158, 161 (1992).

The strictures of the Constitution (as brought pursuant to a § 1983 action) apply only to government action. See Holly v. Scott, 434 F.3d 287 (4th Cir. 2006). However, when private individuals (such as privately employed physicians) undertake conduct attributable to the government, they may be liable, as government actors, for damages resulting from their constitutional violations. Id. at 297 (special concurrence), quoting Evans v. Newton, 382 U.S. 296 (1966). "Conduct that is formally "private" may become so entwined with governmental policies or so impregnated with the governmental

3

character as to become subject to the constitutional limitations placed upon state action." Id. If it is determined that Dr. Jones is not a state actor for purposes of § 1983, i.e., that his medical practice is not so "entwined" or "impregnated" with government character to be deemed a governmental function, Plaintiff cannot maintain this action as correctly determined by this Court in its Recommendation of Dismissal dated June 12, 2007. (See Doc. 2).

### A.   DR. JONES IS NOT A "STATE ACTOR" FOR PURPOSES OF 42 U.S.C. § 1983.

The question of whether a private medical specialist who contracts with a governmental entity (here, the ADOC indirectly through PHS) is a state actor for purposes of § 1983 has received thorough analysis in the Eleventh Circuit as well as the United States Supreme Court.

In Ancata v. Prison Health Services, Inc., 769 F.2d 700 (11th Cir. 1985), Ancata, was arrested and confined in the Broward County, Florida Jail in August 1982. Id. at 701. At the time of his incarceration, the Broward County Jail contracted with PHS to provide medical services to its inmates. Id. Shortly after his incarceration began, Ancata began complaining of a variety of unrelated medical symptoms, including swelling, inability to sleep, chills, back pain, tingling, numbness and double vision. Id. PHS treated his complaints conservatively as they arose. Id. Ancata's appointed public defender obtained a court order compelling his evaluation by orthopedic and neurological specialists. Id. In the course of specialist evaluation, Ancata was diagnosed with leukemia. Id. He died in December 1982. Id.

Plaintiff, Ancata's representative, alleged that PHS--by and through its nurses and Medical Director, Dr. Henry Blady--failed to take appropriate steps to have Ancata

4

examined by an outside or "free world" orthopedic specialist or psychiatrist. Id. Plaintiff alleged that PHS, Dr. Blady, and multiple nurses violated Ancata's right to be free from cruel and unreasonable punishment by failing to order specialist consultation in a timely fashion. Id. at 701. Dr. Blady and the Defendant nurses filed motions to dismiss which were granted by the District Court. Id. at 701. Plaintiff appealed. Id.

In determining that Dr. Blady and the Defendant nurses were state actors, the Court held "[w]here a function which is traditionally an exclusive prerogative of the state (or here, county) is performed by a private entity, state action is present." Id. at 703, citing Jackson v. Metropolitan Edison Co., 419 U.S. 345 (1974); Lawyer v. Kernodle, 721 F.2d 632 (8th Cir. 1983); Morrison v. Washington County, Alabama, 700 F.2d 678 (11th Cir. 1983); and Perez v. Sugarman, 499 F.2d 761 (2nd Cir. 1974). The Court reasoned that the Defendants were state actors because they provided medical care to inmates inside the Broward County Jail (a government owned facility). Id. at 701. Ancata did not address the status of a medical specialist who contracts directly with the government to provide treatment to inmates in a private setting, or, in the alternative, through an intermediate company such as PHS.

One year after Ancata, the Eleventh Circuit decided Ort v. Pinchback, 786 F.2d 1105 (11th Cir. 1986). In Ort, Plaintiff, an Alabama inmate, brought a § 1983 action claiming that Dr. W.L. Pinchback, Jr. and Correctional Medical Systems ("CMS") acted with deliberate indifference to his serious medical needs by failing to appropriately treat scoliosis and kyphosis. Id. at 1106. CMS contracted with the ADOC to provide medical services to ADOC's inmates, including Ort. Id. CMS subcontracted with Dr. Pinchback

5

as a specialist (apparently through an intermediary company, Prison Management Systems, Inc.) to treat inmates with orthopedic concerns. Id.

In Ort, it was undisputed that Dr. Pinchback was not an ADOC (government) employee, but instead, rendered services as a private physician under contract with CMS. Id. at 1107. The Ort Court determined, without significant analysis, that Dr. Pinchback provided medical care under color of state law. Id. The Court held simply that Dr. Pinchback performed "a function which is traditionally the exclusive prerogative of the state" when he took over the state's responsibility for attending to inmate medical needs." Id. quoting Morrison v. Washington County, Ala., 700 F.2d 678, 683 (11th Cir. 1983). The Court did not, however, examine the contractual obligation between Dr. Pinchback, ADOC, and CMS. Id.

In 1988 (apparently in response to the confusion that existed among the Circuits with regard to how private physicians were to be treated for purposes of § 1983) the United States Supreme Court decided West v. Adkins, 487 U.S. 42 (U.S. 1988). In West, the Court addressed, in detail, that analysis to be utilized in determining whether a physician who contracts with a state (or quasi-governmental entity such as PHS) to provide medical services to inmates acts "under color of state law" within the meaning of § 1983. Id. at 42. In deciding this issue, the Court specifically noted the inherent confusion among the Circuits with regard to classifying private/contracted physicians as state actors. Id. at 47. Ancata and Ort were specifically cited. Id.

In West, the Plaintiff, a North Carolina inmate, tore his Achilles tendon while playing volleyball at Odom Correctional Center located in Jackson, North Carolina. Id. at 43. Plaintiff was transferred to Odom's infirmary and, subsequently, to an acute care

facility in Raleigh's Central Prison Hospital. Id. at 44. Dr. Samuel Adkins, a private physician, contracted with the State of North Carolina to provide orthopedic services to inmates at the prison hospital. Id. Plaintiff filed suit alleging that Dr. Adkins failed to treat his injury appropriately, and, as a result, was liable for damages pursuant to § 1983. Id. at 45.

In determining whether Dr. Atkins was a state actor, the Court entered into an analysis of Dr. Adkins' contract and employment relationship with the State of North Carolina. Id. at 57. The Court determined that Dr. Adkins was, indeed, a state actor because the nature of his contractual and employment relationship tied him closely to a government entity (the State of North Carolina) and placed him in position where his individual professional judgment in caring for inmates was potentially compromised. Id. at 57. Dr. Adkins' contract dictated that he was, essentially, a prison doctor. Id. at 44.

Under his contract with the State, Dr. Adkins was required to (1) see *all* orthopedic and neurological referrals; (2) perform orthopedic surgery as scheduled; (3) conduct rounds as necessary for surgical and orthopedic patients; (4) coordinate with the physical therapy department with regard to inmate treatment; (5) request assistance of neurosurgical *consultants* on spinal surgery cases; (6) provide emergency on-call orthopedic services 24 hours per day; and (7) furnish two days of professional services at the prison per week in fulfillment of these duties. Id. at 44.

The Court further noted that Dr. Adkins was directly employed by the Director of the Division of Prisons (a government position) and was paid by the State of North Carolina to provide orthopedic services. Id. at 55. He treated inmates at the state owned prison within the prison's hospital which was "designed to be removed from the

community." Id. at 57. As such, the Court determined that the manner in which Dr. Adkins treated plaintiff was controlled/influenced by the prison environment. Id. at 57. The following is relevant in its entirety:

> Respondent (Adkins) carried out his duties at the state prison within the prison hospital. That correctional setting, specifically designed to be removed from the community, inevitably affects the exercise of professional judgment. Unlike the situation confronting free patients, the non-medical functions of prison life inevitably influence the nature, timing, and form of medical care provided to inmates such as West.

Id. at 57.

Under West, a Court must analyze the nature of the relationship (both contractual and employment-based) between the privately contracted physician and the government to determine whether the physician may be deemed a state actor. A private physician may be found to be a state actor if his relationship with the government is so closely tied as to influence his professional judgment. Id. This analysis must be made on a case by case basis. "There is 'no specific formula' for determining whether state action is present." See Hicks v. S. Md. Health Sys. Agency, 737 F.2d 399, 402 n.3 (4th Cir. 1984) (internal quotation marks omitted). "What is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity." See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001). "While a variety of factors may bear upon the inquiry, none is individually dispositive; instead, they serve to inform an evaluation of the 'totality of the circumstances.'" See Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 343 (4th Cir. 2000); and Mentavlos v. Anderson, 249 F.3d 301, 311-12 (4th Cir. 2001) (cataloging various approaches to determining state action).

8

a.  **THE NATURE OF DR. JONES' RELATIONSHIP WITH PHS DOES NOT RENDER HIM A STATE ACTOR.**

Dr. Jones entered into a "Specialist Physicians Agreement" with PHS on December 19, 2003 which specifically delineates the nature of their professional relationship. The Agreement clearly states that Dr. Jones has been retained as an independent contractor to provide ophthalmologic services to certain inmates referred to him by PHS <u>at its discretion</u>, and, further, that PHS exercises <u>no control over the manner in which Dr. Jones provides medical services</u>. (<u>See</u> Agreement produced in response to Court Order dated September 11, 2007 at ¶¶ 1 & 5). The following sections of Dr. Jones' agreement are relevant in their entirety.[2]

    1.    **PRINCIPAL TERMS:**    **PHS** hereby engages the **Specialist** and the **Specialist** hereby accepts engagement by **PHS** to provide professional medical services, on a non-exclusive basis, for the inmates located in **Facility** under the terms and conditions hereinafter set forth:

                      *    *    *

    1.2    Fees for the **Specialist** Services:  **PHS** agrees to reimburse at one hundred percent (100%) of the Alabama Medicare fee schedule for covered authorized services.

                      *    *    *

    1.3    (a)    General and Professional Liability Insurance:  The **Specialist** shall be insured under a general and professional liability insurance policy covering services to be performed under this Agreement which provides a minimum coverage of $1,000,000 per occurrence and $3,000,000 in the annual aggregate, or a higher amount if such is required by State or local law, regulation or medical society practice.

              (b)    Workers' Compensation:  **PHS** shall not be responsible for providing worker's compensation coverage to **Specialist** or **Specialist's** employees if any since **Specialist** is an

---

[2] A complete redacted copy of the Agreement is being produced simultaneously to the Court for its review.

        independent contractor. If such coverage is required by law **Specialist** shall be responsible for acquiring it.

    (c)    Tax Liability: **Specialist** is solely responsible for any tax federal, state or local authorities as a result of this Agreement. **PHS** shall not withhold any taxes from payments made to **Specialist** under this Agreement, nor shall **PHS** be responsible for providing unemployment insurance coverage for **Specialist**.

*   *   *

5.    <u>**STATUS**</u>: In performing services under this Agreement, **Specialist** shall be acting as an independent contractor. Under no circumstances, shall **Specialist** or any other person employed by or associated with the **Specialist** be treated as or hold themselves out to be as an employee of **PHS**. **PHS** shall exercise no control over the professional practice of medicine by **Specialist** in providing services under this Agreement and **PHS** shall have no retained right of control, express or implied, over the manner in which **Specialist** performs any services which in any way involve the practice of medicine under this Agreement. **Specialist** is not eligible for and may not participate in any pension, health or other fringe benefit plan offered by **PHS** to its employees.

*   *   *

6.    <u>**HOLD HARMLESS AND INDEMNIFICATION**</u>: **Specialist** agrees to indemnify and hold harmless **PHS** and its agents and employees from any and all claims, damages and lawsuits of any kind whatsoever based upon the acts or omissions of **Specialist** or any of its staff members, employees or agents.

(<u>See</u> Agreement).

In applying <u>West</u>, Dr. Jones' relationship with PHS does not tie his medical practice and/or independent medical judgment to the confines of Alabama's correctional system as necessary to render him a state actor. First, unlike Dr. Adkins in <u>West</u>, Dr. Jones did not treat Landrum in prison. (<u>See</u> Doc. 1). All of the care and treatment rendered to Landrum by Dr. Jones was done at Dr. Jones' office at Baptist Medical Center in Montgomery. (<u>Id</u>.). As such, neither the ADOC nor PHS had any personnel or

policy in place dictating/influencing the manner in which Dr. Jones exercised his professional judgment. (See Agreement at ¶ 5). To the contrary, the Agreement between PHS and Dr. Jones clearly dictates that he is an independent contractor and that PHS has no control over the manner in which he treats patients. (Id.) "**PHS** shall exercise no control over the professional practice of medicine by **Specialist** [Dr. Jones] in providing services under this Agreement and **PHS** shall have no retained right of control, express or implied, over the manner in which **Specialist** [Dr. Jones] performs any services which in any way involve the practice of medicine under this Agreement." (See Agreement at ¶ 5) (emphasis in original).

Moreover, the Agreement specifically dictates: (1) that Dr. Jones shall be independently insured under a general and professional liability insurance policy covering services to be performed under the Agreement, (2) that PHS reserves the right to refer inmates to Dr. Jones in a non-exclusive basis, (3) that PHS is not responsible for providing Dr. Jones with worker's compensation coverage, (3) that Dr. Jones is solely responsible for paying any and all taxes to federal, state or local authorities, (4) that PHS shall not withhold any taxes from payments made to Dr. Jones, (5) that Dr. Jones is responsible for providing his own unemployment insurance coverage, and (6) that Dr. Jones is not eligible for and may not participate in any pension, health or other fringe benefit plan offered by PHS to its employees. (See Agreement at ¶¶ 1, 1.2, 1.3, 5 & 6). Moreover, tellingly, PHS and Dr. Jones have entered into converse indemnity agreements. (Id.)

PHS and Dr. Jones have entered into a contractual arrangement that goes to great lengths to define their relationship in a manner to prevent intermingling and/or

entwinement of his professional services/judgment with that of PHS or the ADOC. (Id.) In fact, the Agreement makes it quite clear that PHS does not wish to influence Dr. Jones' discretion in any way and does not wish to be involved in the manner in which Dr. Jones' practice is organized from a business perspective. (Id.) Since there is no relationship between PHS and Dr. Jones "entwining" the manner in which he provides medical services to inmates with those potential confines of the correctional system (a government entity), he is not a "state actor" for purposes of § 1983.

Since West, Courts have found that contracting physicians are not "state actors" for purposes of § 1983 where a separation of control exists between the physician and the correctional system. See Holly v. Scott, 434 F.3d 287 (4th Cir. 2006) (Holding that West does not stand for the proposition that the provision of medical care to an inmate is always a public function, regardless of what entity operates the correctional facility where he is housed), id. at 43-44 (noting that the state-prison hospital (where defendant doctor worked) was "operated by the state"); Conner v. Donnelly, 42 F.3d 220, 221 (noting that the question presented in West concerned "an inmate of a state-run prison"); and West, supra. at 56 n. 15 (recognizing that physicians' "delivery of medical care was not unaffected by the fact that the state controlled the circumstances and sources of a prisoner's medical treatment").

### III.   CONCLUSION

In order for Dr. Jones to be deemed a state actor for purposes of § 1983, his contractual and employment relationship with the State of Alabama (the ADOC and/or PHS) must be such that the relationship impacts the manner in which he provides treatment to those inmates referred for treatment, including Landrum. Simply stated, Dr.

Jones may be deemed a state actor if and only if the manner in which he provided medical services caused him to act like a government or quasi-governmental entity, not as a private physician.

Here, information evident from the pleadings as well as from the Agreement now produced pursuant to Court Order, clearly shows that Dr. Jones' medical practice is, by design, isolated from the ASOC and/or PHS's practice of correctional medicine. Dr. Jones did not contract directly with the ADOC and PHS has no influence over the manner in which Dr. Jones practices medicine. As such, Dr. Jones is not a state actor.

WHEREFORE, premises considered, Defendant John Allen Jones, III, moves the court to enter an Order reinstating its Recommendation of Dismissal entered on June 12, 2007.

Respectfully submitted this the 26th day of September, 2007.

> s/ R. Brett Garrett
> R. BRETT GARRETT (GAR085)
> Attorney for Defendant, John
> Allen Jones, III, M.D.

Of Counsel:
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
P.O. Box 270
Montgomery, AL 36101-0270
334-206-3138 (telephone)
334-481-0808 (facsimile)
bg@rsjg.com  (email)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon the following by placing a copy thereof in the United States Mail, postage prepaid and properly addressed, on this the 26th day of September, 2007:

Johnny Landrum (AIS # 134871)
BIBB CORRECTIONAL FACILITY
565 Bibb Lane
Brent, AL 35034

                                              *s/ R. Brett Garrett*
                                              Of Counsel