IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOHNNY LANDRUM (AIS # 134871), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **2:07-cv-495-WKW** |
| | § | |
| DR. JOHN ALLEN JONES, et al., | § | |
| | § | |
| Defendants. | § | |

## SPECIAL REPORT OF DEFENDANT JOHN ALLEN JONES, III, M.D.

COMES NOW Defendant, John Allen Jones, III, M.D. (identified in Plaintiff's Complaint as "Dr. John Allen Jones"), and presents the following Special Report with regard to this matter:

## I. INTRODUCTION

Plaintiff, Johnny Landrum (AIS # 134871) (hereinafter "Plaintiff" or "Landrum"), is an inmate currently confined at Bibb County Correctional Facility located in Brent, Alabama. (Ex. "A" to Doc. No. 1). On January 22, 2007, Plaintiff commenced an action against Dr. Jones by the filing of a Complaint in the Circuit Court of Montgomery County, Alabama styled "Johnny Landrum v. Dr. John Allen Jones, III, et al.," Civil Action No.: CV-07-134. (Id.). Dr. Jones is an ophthalmologist in private practice with Drs. Jones & Jones, P.A. whose offices are located at Baptist Hospital in Montgomery, Alabama. (Doc. No. 14). At the time the care in question was provided, Dr. Jones contracted with Prison Health Services, Inc. ("PHS") to provide healthcare to inmates at certain correctional facilities in the State of Alabama, including Bibb. (Id.)

In his Complaint, Plaintiff alleges that Dr. Jones has failed to provide him with appropriate medical care in violation of his constitutional rights pursuant to the Eighth Amendment to the United States Constitution. (Ex. "A" to Doc. No. 1). Plaintiff specifically alleges that he was referred to Dr. Jones for treatment by "Dr. Whitley," Medical Director for Bibb County Correctional Facility, for cataract treatment and surgery. (Id.) Landrum claims that Dr. Jones failed to perform cataract surgery in an appropriate manner by surgically implanting a replacement lens that was ordered for another inmate's use. (Id.) Landrum further claims that Dr. Jones represented to him that he would not have to wear corrective lenses after the surgical procedure and that he would have perfect vision post-procedure. (Id.)

On June 5, 2007, Dr. Jones removed Plaintiff's Complaint to this Court. (Id.) On June 12th, the Court entered a Recommendation that Plaintiff's claims against Dr. Jones be dismissed with prejudice prior to service in accordance with the directives of 28 U.S.C. § 1915A(b)(1). (Doc. No. 2, Withdrawn). Specifically, the Court determined that Plaintiff's allegations against Dr. Jones pursuant to 42 U.S.C. § 1983 (citing violations of the Eighth Amendment to the United States Constitution) were due to be dismissed because Dr. Jones did not provide medical treatment to the Plaintiff as a person "acting under the color of state law" or as a "state actor." (Id.) On June 24th, Landrum filed an Objection to Judge Walker's Recommendation arguing, in part, that Dr. Jones is a "state actor" and, as such, potentially liable pursuant to § 1983 for those alleged injuries stemming from the cataract surgery in question. (Doc. No. 4).

On September 11th, Judge Walker withdrew her Recommendation of Dismissal and entered an Order directing Dr. Jones to provide the Court with a response advising

whether he has entered into a contract with the ADOC or PHS to furnish medical treatment to state inmates. (Doc. No. 5).

Dr. Jones filed a response and brief in support of reinstatement of recommendation of dismissal on September 26th. (Doc. No. 13). On October 12th, The Court entered an order requesting that Dr. Jones submit an Answer and Special Report. (Doc. No. 19).

Dr. Jones has, pursuant to Court order, reviewed Landrum's claims to determine the facts and circumstances relevant thereto. At this time, Dr. Jones is submitting this Special Report, which is supported by a Certified Copy of Plaintiff Landrum's medical records from Baptist Medical Center South (attached hereto as Ex. "A"), and the Affidavit of John Allen Jones, III, M.D. (attached hereto as Ex. "B"). These evidentiary materials demonstrate that Plaintiff Landrum has been provided appropriate medical treatment at all times, and that the allegations in his Complaint are without merit.

## II. <u>NARRATIVE STATEMENT OF FACTS</u>

At all pertinent times, Johnny Landrum (AIS # 134871) has been incarcerated as an inmate at Bibb County Correctional Facility located in Brent, Alabama. (Ex. "A" to Doc. No. 1). On January 23, 2006, Mr. Landrum presented to Dr. Jones' office for an eye examination with complaints of decreased vision in the left eye with cataract, gradual decreasing vision in the right eye, and occasional "floaters" without flashes. (<u>See</u> Ex. "B"). Mr. Landrum communicated a medical history that was significant for a surgically repaired detached retina in the left eye, and high myopia, as well as high blood pressure and an unspecified back injury. (<u>Id</u>.)

In evaluating Mr. Landrum, Dr. Jones determined that he had 20/40[1] best corrected vision in the right eye and very poor "count fingers" vision in the left eye at five (5) feet, approximately 20/1600 corrected.[2] (Id.) The lens of the right eye was clear; the lens of the left eye was found to be markedly dark and opaque due to the presence of a 3+ cataract. (Id.) Both retinas remained attached per initial evaluation. (Id.) Based upon the initial evaluation, Dr. Jones recommended a phacoemulsification procedure to remove the cataract from the left eye.[3] (Id.)   Mr. Landrum was instructed to return for evaluation via A-scan ultrasound in preparation for surgical placement of an intraocular lens implant (IOL).[4] (Id.)

On June 1, 2006, Mr. Landrum received an A-scan. (Id.) The A-scan showed that Mr. Landrum's left eye was extremely long as related to normal, to the order of -1.0 (compared to normal of +20.0). (Id.) Dr. Jones subsequently ordered a specially designed +1 powered IOL in preparation for the phacoemulsification procedure. (Id.)

On June 7, 2006, Mr. Landrum presented for surgery. (Id.) He was prepped and draped in the usual manner for a left intraocular procedure. (Id.) At that time Dr. Jones determined that that the cataractous left lens was dislocated inferiorly and temporally from its zonules (supporting structure). (Id.) Due to the fragile nature of the support system holding the lens in place, the phacoemulsification procedure was abandoned in

---

[1] When a patient's vision is 20/40, that means that when they are standing or sitting 20 feet away from the eye chart, they can only see letters (or numbers) on the chart that are large enough for a person with normal vision to see 40 feet away (the 20/40 line).  The higher the second number (such as 20/100, 20/200, 20/400), the worse is the person's eyesight.
[2] It is common to record vision worse than 20/400 as "count fingers" (CF at a certain number of feet).
[3] Phacoemulsification is a surgical procedure whereby a microscopic instrument is passed through a small incision toward the lens and ultrasound is used to break the cataract into small pieces which are subsequently extracted.  Once the cataract is removed, a replacement lens is inserted.
[4] A-scan ultrasound biometry (commonly referred to as an A-scan) is a routine diagnostic test used to determine the length of the eye for calculation of intraocular lens power.

favor of an extracapsular cataract extraction and insertion of an anterior chamber intraocular lens. (Id.) The specially ordered lens could not be used. (Id.)

The anterior chamber was entered and the lowest powered anterior chamber lens available (+16) was inserted and securely placed. (Id.) Mr. Landrum tolerated the procedure well with no formed vitreous loss. (Id.) He was returned to the recovery room in good condition. (Id.) Mr. Landrum was discharged with appropriate post-operative instructions and prescriptions for Zymar 0.3 % (an ophthalmic antibacterial solution) and Econopred (an ophthalmic corticosteroid) which were written KOP for Mr. Landrum's convenience. (Id.) Mr. Landrum was also provided education materials and instructions for appropriate post-operative care. (Id.)

Dr. Jones evaluated Mr. Landrum post-operatively on June 29, 2006. (Id.) On that date Mr. Landrum stated that the left surgical eye felt good. (Id.) His post-operative evaluation was normal. (Id.) Dr. Jones noted that he had exhausted his prescription for Zymar and was continuing with Econopred as prescribed. (Id.)

Mr. Landrum again presented on August 10, 2006 when it was noted that that he had exhausted his supply of Econopred and was having some glare, double vision and discomfort under the left upper lid. (Id.) In response, Dr. Jones prescribed Tobradex.[5] (Id.) He also evaluated the surgical eye and noted the existence of a number of old tears (breaks) in the retinal posterior pole, a chronic condition that negatively effects the manner in which light spreads across the retina and precludes good vision. (Id.)

Mr. Landrum's vision in the left surgical eye has dramatically improved from "counting fingers" vision at five (5) feet (approximately 20/1600) to 20/200 ambulatory

---

[5] Tobradex (Tobramycin and dexamethasone ophthalmic suspension and ointment) are multiple dose antibiotic and steroid combinations for topical ophthalmic use.

vision with the anterior chamber lens. (Id.) The overall potential for improvement in Mr. Landrum's vision is, of course, limited by the negative effects of his chronic retinal degeneration. (Id.)

Mr. Landrum has made an allegation in this case that Dr. Jones placed a lens in his left eye during surgery that was ordered for another inmate's use. (Ex "A" to Doc. No. 1). This allegation is simply untrue as the lens utilized during Mr. Landrum's surgical procedure was chosen for his specific need. (Id.) Further, in contradiction to Plaintiff's allegations, Dr. Jones has never instructed Landrum that he would not have to wear eyeglasses after the surgical procedure. (Id.) Mr. Landrum will always rely on corrective lenses for best improved vision due to his chronic retinal degeneration and excess myopia. (Id.)

Based on Dr. Jones' review of Mr. Landrum's medical records, and on his personal knowledge of the treatment provided to him, it is Dr. Jones' opinion that Landrum's medical conditions and complaints have been evaluated and treated in a timely and appropriate fashion. (Id.) At all times, Dr. Jones has exercised the same degree of care, skill, and diligence as other similarly situated health care providers would have exercised under the same or similar circumstances. (Id.) In other words, the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. (Id.)

At no time has Dr. Jones denied Mr. Landrum any needed medical treatment, nor has Dr. Jones ever acted with deliberate indifference to any serious medical need of Mr. Landrum. (Id.) At all times, Mr. Landrum's medical complaints and conditions have been addressed as promptly as possible under the circumstances. (Id.)

6

## III. **DEFENSES**

The Defendant asserts the following defenses to the Plaintiff's claims:

1.      The Defendant denies each and every material allegation contained in the Plaintiff's Complaint and demands strict proof thereof.

2.      The Defendant pleads not guilty to the charges in the Plaintiff's Complaint.

3.      Plaintiff's Complaint fails to state a claim against the Defendant for which relief can be granted.

4.      The Defendant affirmatively denies any and all alleged claims by the Plaintiff.

5.      Plaintiff is not entitled to any relief requested in the Complaint.

6.      The Defendant cannot be held liable on the basis of *respondeat superior*, agency, or vicarious liability theories.

7.      The Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

8.      The allegations contained in the Plaintiff's Complaint against the Defendant, sued in his individual capacity, fail to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities. See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Arnold v. Board of Educ. Of Escambia County, 880 F.2d 305, 309 (11th Cir. 1989).

9.      The Defendant pleads the general issue.

10.      This Court lacks subject matter jurisdiction due to the fact that even if Plaintiff's allegations should be proven, the allegations against the Defendant would

amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights. See Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986).

11.     Plaintiff's claims against the Defendant in his official capacity are barred by the Eleventh Amendment to the United States Constitution.

12.     Alabama law provides tort and other remedies for the allegations made by the Plaintiff herein and such remedies are constitutionally adequate.

13.     The Defendant pleads the defense that at all times in treating Plaintiff he exercised the same degree of care, skill, and diligence as other physicians would have exercised under similar circumstances and that at no time did he act toward the Plaintiff with deliberate indifference to a serious medical need.

14.     The Defendant pleads the affirmative defense that the Plaintiff's Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render him liable to the Plaintiff as required by § 6-5-551 of the Ala. Code (1993).

15.     The Defendant pleads the affirmative defenses of contributory negligence and assumption of the risk.

16.     The Defendant pleads the affirmative defense that Plaintiff's damages, if any, were the result of an independent, efficient, and/or intervening cause.

17.     The Defendant pleads the affirmative defense that he is not responsible for the policies and procedures of the Alabama Department of Corrections, Prison Health Services, Inc. or Baptist Hospital.

18.     The Defendant pleads the affirmative defense that the Plaintiff has failed to mitigate his own damages.

19.    The Defendant pleads the affirmative defense that he is not guilty of any conduct which would justify the imposition of punitive damages against him and that any such award would violate the United States Constitution.

20.    This Defendant adopts and asserts all defenses set forth in the Alabama Medical Liability Act, Ala. Code § 6-5-481, et seq., and § 6-5-542, et seq.

21.    The Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. § 1997e(a).  Plaintiff has failed to pursue the administrative remedies available to him.  See Cruz v. Jordan, 80 F. Supp. 2d 109 (S.D. N.Y. 1999) (claims concerning defendants' deliberate indifference to a medical need is an action "with respect to prison conditions" and is thus governed by exhaustion requirement).

22.    The Prison Litigation Reform Act amendment to 42 U.S.C. § 1997(e)(c) mandates the dismissal of Plaintiff's claims herein as this action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks money damages from the Defendant who is entitled to immunity.

23.    The Plaintiff's claims are barred by the Prison Litigation Reform Act of 1995, 42  U.S.C. §1997(e).

24.    The Plaintiff has failed to comply with 28 U.S.C. § 1915 with respect to the requirements and limitations inmates must follow in filing *in forma pauperis* actions in federal court.

25.    The Defendant asserts that the Plaintiff's Complaint is frivolous and filed in bad faith solely for the purpose of harassment and intimidation and request this Court,

pursuant to 42 U.S.C. § 1988, to award said Defendant reasonable attorney's fees and costs incurred in the defense of this case.

26.    The Plaintiff's claims are moot because the events which underlie the controversy have been resolved. See Marie v. Nickels, 70 F. Supp. 2d 1252 (D. Kan. 1999).

## IV. **ARGUMENT**

A court may dismiss a complaint for failure to state a claim if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. Romero v. City of Clanton, 220 F. Supp. 2d 1313, 1315 (M.D. Ala., 2002), (citing, Hishon v. King & Spalding, 467 U.S. 69, 73, (1984). "Procedures exist, including Federal Rule of Civil Procedure 7(a), or Rule 12(e), whereby the trial court may "protect the substance of qualified immunity," Shows v. Morgan, 40 F. Supp. 2d 1345, 1358 (M.D. Ala., 1999). A careful review of Landrum's medical records reveals that he has been given adequate medical treatment at all times. (See Ex. "A" & "B"). All of the allegations contained within Landrum's Complaint are either inconsistent with his medical records, or are claims for which no relief may be granted. Therefore, Landrum's claims against Dr. Jones are due to be dismissed.

In order to state a cognizable claim under the Eighth Amendment, Landrum must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.  See Estelle v. Gamble, 429 U.S. 97, 106 (U.S. 1976); McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999); Palermo v. Corr. Med. Servs., 148 F. Supp. 2d 1340, 1342 (S.D. Fla. 2001).  In order to prevail, Landrum must allege and prove that he suffered from a serious medical need, that Dr. Jones was deliberately indifferent to his

needs and that he suffered harm due to deliberate indifference. See Marsh v. Butler County, 268 F.3d 1014, 1058 (11th Cir. 2001), and Palermo, 148 F. Supp. 2d at 1342. "Neither inadvertent failure to provide adequate medical care nor a physician's negligence in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment." Id. (citations omitted).

Not every claim by a prisoner that medical treatment has been inadequate states an Eighth Amendment violation.  Alleged negligent conduct with regard to inmates' serious medical conditions does not rise to the level of a constitutional violation.  Further, neither an alleged inadvertent failure to provide adequate medical care nor a physician's alleged negligence in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment.  Alleged medical malpractice does not become a constitutional violation merely because the alleged victim is a prisoner. See Estelle, 429 U.S. at 106, McElligott, 182 F.3d at 1254, Hill, 40 F.3d 1176, 1186 (11th Cir. 1994), Palermo, 148 F. Supp. 2d at 1342.  Further, a mere difference of opinion between an inmate and the physician as to treatment and diagnosis cannot give rise to a cause of action under the Eighth Amendment. Estelle, 429 U.S. at 106-108.

Dr. Jones may only be liable if he had knowledge of Landrum's medical condition, Hill, 40 F. 3d at 1191, and acted intentionally or recklessly to deny or delay access to his care, or to interfere with treatment once prescribed. Estelle, 429 U.S. at 104-105.  Dr. Jones cannot be liable on the basis of *respondeat superior*, so the alleged violation must be personal to an individual, not based on a mere supervisory or agency relationship with one who is alleged to have violated Plaintiff's rights. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-692 (U.S. 1978).

Obviously, Landrum cannot carry his burden. The evidence submitted with this Special Report clearly shows that Dr. Jones did not act intentionally or recklessly to deny or delay medical care, or to interfere with any treatment which was prescribed or directed. (See Ex. "A" & "B"). The evidence demonstrates, to the contrary, that Landrum's claims are without merit, that his medical conditions were at all times adequately and timely addressed, and that he was not denied any necessary medical treatment. (Id.) Appropriate standards of care were followed at all times and Landrum consented to receive that medical treatment provided to him by Dr. Jones. (Id.) The evidence, in other words, shows without dispute that all of Plaintiff Landrum's medical conditions were thoroughly evaluated, treated, and monitored in a timely and appropriate manner. (Id.) These facts clearly disprove any claim that Dr. Jones acted intentionally or recklessly to deny treatment or care, or that he failed to invest that time necessary to provide appropriate care under the circumstances. (Id.)

To defeat summary judgment, Landrum must be able to point to cases with "materially similar" facts, within the Eleventh Circuit, that would alert Dr. Jones to the fact that his practice violated Landrum's constitutional rights. See Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994). Dr. Jones submits that there is no case law from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or District Courts sitting within the Eleventh Circuit showing that, under the facts of this case, it was clearly established that these alleged actions violated Landrum's constitutional rights. All of Landrum's medical needs have been addressed or treated in a timely fashion. (See Ex. "A" & "B"). Dr. Jones treated Landrum's conditions,

prescribed and provided needed medications, managed and treated his problems, and provided him access to appropriate medical care at all times. (Id.).

Finally, pursuant to the Court's Order directing this Special Report, Dr. Jones requests that this Special Report be treated and denominated as a Motion to Dismiss and/or a Motion for Summary Judgment. Dr. Jones has demonstrated both through substantial evidence and appropriate precedent that there is not any genuine issue of material facts relating to a constitutional violation, and that he is, therefore, entitled to a judgment in his favor as a matter of law. Plaintiff's submissions clearly fail to meet his required burden.

## V. **CONCLUSION**

The Plaintiff's Complaint is due to be dismissed on its face, and is, further, disproven by the evidence now before the Court. All of the Plaintiff's requests for relief are without merit. Accordingly, Dr. Jones requests that this Honorable Court either dismiss the Plaintiff's Complaint, with prejudice, or enter a judgment in his favor.

Respectfully submitted this the 5th day of December, 2007.

*s/ R. Brett Garrett*
R. BRETT GARRETT (GAR085)
Attorney for Defendant, John
Allen Jones, III, M.D.

Of Counsel:
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
P.O. Box 270
Montgomery, AL 36101-0270
334-206-3138 (telephone)
334-481-0808 (facsimile)
bg@rsjg.com  (email)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon the following by placing a copy thereof in the United States Mail, postage prepaid and properly addressed, on this the 5th day of December, 2007:

Johnny Landrum (AIS # 134871)
BIBB CORRECTIONAL FACILITY
565 Bibb Lane
Brent, AL 35034

*s/ R. Brett Garrett*
OF COUNSEL

14

Landrum, Johnny    #22461
January 23, 2006    Bibb Corr. Fac.    49 y.o. male

Complete Exam ↓ Va. OS, gradual ↓ Va.;
sec. floaters, ⊖ flashes; told he had
a cataract in OS;

$\frac{20/40}{cc}$ $\frac{N 20/30}{cc 20/800}$    $A \frac{14}{14}$

3MH — Retinal Det. OS 10-12 yrs. ago —
treated at Eye Foundation Hosp.
in B'ham

★ MR⊖ = NW ⊖

Surg. for RD

HBP
Back Injury

Meds — HBP Rx + b:

Zantac
Motrin

① Bladder Prob
② colon

Fam. Hx. — Neg

Allergies NKA

Sx = 0, full L

pur P/b = Wt

NW $^{-10.25 + 1.25 × 72}_{-10.25 + 1.00 × 75}$
+2.50 Add

Sce: conn ⊖
A cdg ⊖

L — OD clear
OS 3+ conductivel out

oil pat

F: peri syn below — No holes OD
pooling OS OS — attached

ASS: Cat OS
Rx pseu fail OS
Cell to reschedule

Phaco OS 5/17/06
#88103 BSC

DRS. JONES & JONES, P.A.
2055 E. SOUTH BOULEVARD
SUITE 804
MONTGOMERY, AL 36116

4-14-06 27441 (21

Landrum, Johnny

must have A-scan at 20/20 on 5/17/06

J. Allen Jones M.D.

Phaco IOL OS 6/7/06 at BSC
A Scan 20/20 Ophthalmic Assoc. 6/1/06 @ 3:00 pm

June 1, 2006    Preop
to 20/20 for a Scan OS

order -1.0

6/8/06 P.O.D. #1 ECCE c̄ AC iol OS for luxated cataract —
was unable to use special order IOL power because
of dislocation of lens (cataract)

E-20 | 20/400 —  A/14    few chamber on corn
                        AC deep ; PI open
                        iol-citr
                        some cortex peripherally

M: T1g Zymar ϕϕ c̄ tid, Econopred ϕϕ c̄ OS qid
See other printed order, shield/glasses, K.O.P.
F/u one week
Given Postop Instr

J. Allen Jones M.D.

DRS. JONES & JONES, P.A.
2055 E. SOUTH BOULEVARD
SUITE 804
MONTGOMERY, AL 36116

Landrum, Johnny                    # 27461                    3
June 29, 2006    3 weeks    PO Phaco IOL OS
                            OS feels good, occ fb sens.

V 20/400 PHNH
IOL / SC

O+2 OS    A / 20

                            Eye Meds - out OS
                                        Bygment
                                    Econopred gd

8-10-04    2 mo. PO Phaco IOL OS
           out of drops X 1 week -
           double VA, glare;
V 20/400 Sees 2 lines    OS hurting X 1 week
IOL                        under upper lid

A / 14    -13 = 20/200

N dm OS

F:

                    DRS. JONES & JONES, P.A.
                    2055 E. SOUTH BOULEVARD
                          SUITE 904
                    MONTGOMERY, AL  36116

## PRISON HEALTH SERVICES: AUTHORIZATION LETTER

| | | | |
|---|---|---|---|
| **Patient Name:** | Landrum, Johnny | **Inmate Number:** | 134871LA |
| **Service Authorized:** | Office Visits: Op Surgical Followup Referral | **Effective Dates:** | 07/07/2006 |
| **Effective:** | Visits authorized for 60 days from effective date. | **Visits Authorized:** | 1 |
| **Responsible Facility:** | Bibb Correctional facility | **Contact Name:** | Michelle Pope |
| **Authorization Number:** | 16282887 | **Telephone Number:** | (334)395-5973 Ext 14 |

**Note to Provider of Services:**
- Medicare/Medicaid do not cover any health services provided to an inmate in custody, except in certain circumstances not applicable to this inmate.
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number)
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPAA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPAA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPAA's Privacy Rule does not apply to PHS.
- Payment will not be processed until we receive a clinical summary.

**For Payment Please Submit Claims To:**

Prison Health Services
P.O. Box 967
Brentwood, TN 37024-0967

| **The consulting physician should complete this section.** **The completed form will be sealed in the attached envelope and returned with an officer to the correctional facility.** |
|---|
| **Clinical Summary or Attached Report** |
| *2 wo post of ECCE/iol OS* *& needs to continue gts — use tobradex qid* *KOP    x 2 wks, then tid x 1 ok, then bid x 1 ok* *Sample given* |

***\*\*\* For security and safety, please do not inform patient of possible follow-up appointments. \*\*\****

| Signature of Consulting Physician: | _[signature]_ | 08 10 06 | | |
|---|---|---|---|---|
| | | Date | | Time |
| **Reviewed and Signed By** **Medical Director:** | | Date | | Time |

07/10/2006

# PRISON HEALTH SERVICES: AUTHORIZATION LETTER

| Patient Name: | Landrum, Johnny | Inmate Number: | 134871LA |
|---|---|---|---|
| Service Authorized: | Office Visits: Op Surgical Followup Referral | Effective Dates: | 06/14/2006 |
| Effective: | Visits authorized for 60 days from effective date. | Visits Authorized: | 1 |
| Responsible Facility: | Bibb Correctional facility | Contact Name: | Michelle Pope |
| Authorization Number: | 16215999 | Telephone Number: | (334)395-5973 Ext 14 |

**Note to Provider of Services:**
- Medicare/Medicaid do not cover any health services provided to an inmate in custody, except in certain circumstances not applicable to this inmate.
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number)
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPAA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPAA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPAA's Privacy Rule does not apply to PHS.
- Payment will not be processed until we receive a clinical summary.

**For Payment Please Submit Claims To:**

Prison Health Services
P.O. Box 967
Brentwood, TN 37024-0967

| The consulting physician should complete this section. The completed form will be sealed in the attached envelope and returned with an officer to the correctional facility. |
|---|
| **Clinical Summary or Attached Report** |

June 29, 2006   3 wks PO Phaco/tec OS

lent shade profile

Prednisolone eye gt T OS tid id,

bid id, fu qd until redun

FC 3 wks

*** For security and safety, please do not inform patient of possible follow-up appointments. ***

| Signature of Consulting Physician: | _[signature]_ mS | 06 29 06 | |
|---|---|---|---|
| | | Date | Time |
| Reviewed and Signed By Medical Director: | | Date | Time |

06/14/2006

# PRISON HEALTH SERVICES: AUTHORIZATION LETTER

| Patient Name: | Landrum, Johnny | Inmate Number: | 134871LA |
|---|---|---|---|
| Service Authorized: | Outpatient Surgery: Op One Day Surgery | Effective Dates: | 02/22/2006 |
| Effective: | Visits authorized for 60 days from effective date. | Visits Authorized: | 1 |
| Responsible Facility: | Bibb Correctional facility | Contact Name: | Michelle Pope |
| Authorization Number: | 15878465 | Telephone Number: | (334)395-5973 Ext 14 |

**Note to Provider of Services:**

- Medicare/Medicaid do not cover any health services provided to an inmate in custody, except in certain circumstances not applicable to this inmate.
- Authorization is diagnosis and procedure specific. Any additional tests, procedures, and inpatient or outpatient services must receive prior authorization to ensure benefit eligibility and payment. (Use above contact name and telephone number)
- Authorization for payment of service is guaranteed only if service is provided during the actual time of confinement to the referring correctional facility.
- HIPAA: Please be advised Prison Health Services, Inc. ("PHS") is not a covered entity under HIPAA's Rule on the Privacy of Individually Identifiable Health Information Standard ("Privacy Rule"). Because PHS does not engage in electronic transactions under HIPAA's Electronic Transactions and Code Set Standards ("Transaction Standards"), HIPAA's Privacy Rule does not apply to PHS.
- Payment will not be processed until we receive a clinical summary.

**For Payment Please Submit Claims To:**

Prison Health Services
P.O. Box 967
Brentwood, TN 37024-0967

B0615700424   LANDRUM,JOHNNY
DOB: 03/03/56   Age:50Y   MR #:704362
Admit Date/Time: 06/07/06    0651A
567 JONES,JOHN ALLEN

---

**The consulting physician should complete this section.**
**The completed form will be sealed in the attached envelope and returned with an officer to the correctional facility.**

**Clinical Summary or Attached Report**

Dx: Dislocated Cataract OS

Procedure: ECCE c̄ IOL OS ; local IV sedation ; out patient [illegible]

Post op: Tylenol #2 po q 8 h prn discomfort, keep shield and pad over Lt eye , keep follow up appt

[illegible signature]

*** For security and safety, please do not inform patient of possible follow-up appointments. ***

Signature of Consulting Physician: [signature]    Date: 06 07 06    Time:

Reviewed and Signed By Medical Director: [signature]    Date:    Time:

02/23/2006

### BAPTIST MEDICAL CENTER SOUTH
2105 East South Blvd
Montgomery, AL 36116
(334) 288-2100

Name: LANDRUM, JOHNNY

Admit Type: Outpatient Surgery
Discharge Date        06/07/2006
Age: 50 years
SS Number: 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

MR#: B000704362          Account:   B0615700424
Sex: Male                 Admit:   06/07/2006
DOB: 03/03/1956          Room/Bed:  -
Allen, MD

Admitting Physician:      Jones, John

Ordering Physician:       Jones, John

Allen, MD

## Surgical Pathology Final Report

PATHOLOGY NO:    SS-06-0002920       Collected:      06/07/2006
                                     Received:       06/07/2006 10:20:00 AM
                                     Physician:      Pinkston, Glen R

**Surgical Specimen Received**
Lens, left eye.

**Final Diagnosis**
**Lens, left eye:**
   **Degenerative changes (cataract).**

GRP/pmp 6/8/2006

Pinkston, Glen R, M.D
(Electronically signed by)
Verified: 06/08/06 11:07 a
GRP/pp

**Gross Description**
Received is a 0.6-cm dark opaque yellow-brown lens. The specimen is bisected and submitted entirely.
GRP/pmp 6/7/2006

Diagnostic Services Provided by Alabama Pathology Associates  P.C.

| MR#: | B000704362 | Room/Bed: - | Account: |
|---|---|---|---|
| B0615700424 | | | |
| Printed: | 6/8/2006 11:07 AM | Sex: Male DOB: 03/03/1956 | |
| Name: LANDRUM, JOHNNY | | | |

Page 1 of 1
N/A

# JOHN ALLEN JONES, III, M.D., F.A.C.S.

**BAPTIST MEDICAL TOWERS • SUITE 804**
**2055 EAST SOUTH BOULEVARD • MONTGOMERY, ALABAMA 36116**
Tel: 334-281-6688 • Fax: 334-281-0324

## POST-OPERATIVE INSTRUCTIONS

**EYE MEDICATIONS:** You will be given a prescription for **VIGAMOX** to be filled today.
~~OCUSOFT LID SCRUBS~~, ECONOPRED PLUS, SYSTANE PF,
and Tylenol are included in your post-op kit.

~~OCUSOFT LID SCRUBS:~~ *KOP* *Saline + Cotton Balls*
Bathe your eyelids with the ~~LID SCRUBS~~ once per day.

~~VIGAMOX:~~ *4 gmes* *KOP* Use one (1) drop in the operative eye ___3___ times a day for
one (1) week.

❖ **WAIT A FEW MINUTES BETWEEN DROPS** ❖

**ECONOPRED PLUS: (SHAKE WELL)**
*KOP* Use one (1) drop in the operative eye ___4___ times a day for
one (1) week.

**SYSTANE PF:** Use these over-the-counter artificial tears as needed for mild
foreign body sensation or dryness. (Additional **SYSTANE PF**
may be purchased at any grocery or drug store.)

❖ No strenuous activity until advised. No lifting things weighing over 20 pounds. If you must
stoop, keep your head above your chest.
❖ Avoid getting soap or shower water in operated eye.
❖ You generally may see your beautician one week post-op.
❖ Notify Dr. Jones if decreased vision or pain is noted.
❖ It is not unusual for some "floaters" to be noticed. Some discomfort might be noted when out of
doors or in a draft. For this reason, you are urged to wear wraparound sunglasses.
❖ You may use Tylenol or Advil for mild pain.
❖ You should sleep in your shield for the first 2 to 3 weeks post-operatively and wear protection
during waking hours.
❖ Glasses will be prescribed 1 to 2 months following surgery, giving your eye time to heal. A
change in prescription may be required within the first year following surgery.
❖ It is permissible to read, watch TV or otherwise use your eyes almost immediately. You are
encouraged not to strain your eyes. Your vision should gradually improve every couple of days
while your eye heals.
❖ Please keep follow-up appointments. They are generally as follows:
one day post op;          one week later; and          four weeks later
❖ If you have questions, please ask. No question is stupid except unasked ones.
❖ Your insurance will be filed for you.
❖ If you cannot locate Dr. Jones for a problem, call the emergency room of the day. Ask you the
ophthalmologist on call.
❖ The length of time required for decreased physical activity and/or time off from the job varies
with each individual.

# UTILIZATION MANAGEMENT REFERRAL REVIEW FORM

**PHS**

Form must be Complete and Legible. You must Type or Print
*Please send this form with the Authorization Letter to the service provider at the time of the Appointment*

## DEMOGRAPHICS

| | | |
|---|---|---|
| **Site Name & Number:** BIBB 831 | **Patient Name: (Last, First.)** Landrum | **Date: (mm/dd/yy)** 06 07 06 |
| **Site Phone #** 205-225-0338 | **Alias: (Last, First.)** Johnny | **Date of Birth: (mm/dd/yy)** 07 17 76 |
| **Site Fax #** 205-225-0338 | **Inmate #** 134871 | **PHS Custody Date: (mm/dd/yy)** 09 15 03 |
| **Will there be a charge?** ☑Yes ☐No  **Sex** ☑Male ☐Female | **SS Number** 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 | **Potential Release Date: (mm/dd/yy)** 12 08 07 |

**Responsible party:** ☑ PHS  ☐ Auto Ins.  ☐ Health Ins.(Excludes Medicare/Medicaid Managed Care alternative plans )  ☐ Other, be specific (Excludes Medicare and Medicaid):_____

## CLINICAL DATA

**Requesting Provider:** ☑Physician ☐NP, PA ☐Dental
James P Whitley

**Facility Medical Director Signaure and Date:**

☐ Service meets criteria for "approval via protocol"

**Place a check mark (✓) in the Service Type requested (one only) and complete additional applicable fields.**

☑Office Visit (OV)  ☐X-ray (XR)  ☐Scheduled Admission (SA)
☐Outpatient Surgery (OS)  ☐Dialysis (DA)

☐Routine  ☐Urgent

**Estimated Date of Service (mm/dd/yy)** 06 08 06
*(This starts the approval window for the "open authorization period")*

**Multiple Visits/Treatments:**
☐Radiation therapy
☐Chemotherapy
**Number of Visits/Treatments:** 1  ☐Other:_____

**Specialist referred to:** T. Jones

**Type of Consultation, Treatment, Procedure or Surgery:**
F/U cataract surgery

You must include copies of pertinent reports such as lab results, x-ray interpretations and specialty consult reports with this form.
☐ Pertinent Documents have been attached and faxed.

**History of illness/injury/sypmptoms with Date of Onset:**
He had cataract surgey & needs F/U tomorrow.

**Results of a complaint directed physical examination:**
shield over OD

**Previous treatment and response (including medications):**
cataract surgy today

***For security and safety, please do not inform patient of possible follow-up appointments***

**UM DETERMINATION:**  ☐ Offsite Service Recommended and Authorized

☐ Alternative Treatment Plan (explain here):

☐ More Information Requested:  (See Attached)

☐ Resubmitted with requested information.

**Date resubmitted:** ___/___/___

**Regional Medical Director Signature, printed name and date required:** ___/___/___ (mm/dd/yy)

**Do not write below this line. For Case Manager and Corporate Data Entry ONLY.**

| Cert Type: | Med Class: | UR Auth #: |
|---|---|---|

UM Referral review form 2-05-20041

BAPTIST SURGERY CENTER

# PHYSICIAN'S ORDERS

Landrum, Johnny

Drug Sensitivities & Allergies

NKA

(1) THE NURSE RESPONSIBLE FOR CARRYING OUT AN ORDER MUST CHECK (✓) AND INITIAL THE ORDER IN THE COLUMN TO THE LEFT.
NOTE: (2) EVERY ORDER MUST BE PLAINLY WRITTEN AND SIGNED.
WHEN A PATIENT'S CONDITION REQUIRES THAT AN ORDER BE RECEIVED OVER THE TELEPHONE, THE ORDER MUST BE RECEIVED BY THE NURSE IN CHARGE, RECORDED ON PHYSICIAN'S ORDER SHEET AND COUNTERSIGNED BY THE ATTENDING PHYSICIAN ON HIS NEXT VISIT, AND DATE OF AUTHENTICATION MUST BE RECORDED.

| DATE | NURSE CHECK (✓)AND INITIAL | ORDERS FOR MEDICINES AND TREATMENT |
|------|------|------|
| 6/7/06 | | CATARACT PROCEDURE |
| | | Dr. J. Jones |
| | | 1. O.P. - Surgery O.P 2nd Case |
| | | 2. Pre-op per anesthesia routine ophthalmic conscious anesthesia sedation orders |
| | | 3. Have OP permit signed for Cataract Ext./IOL O.S.  Left Eye |
| | | 4. Have patient void prior to coming to O.R. |
| | | 5. At 7:15 am |
| | | Ophthaine 0.5% - gtts  1 in O.S. first |
| | | Then  Zymar 0.3%            gtts  2 of each |
| | | 2% Cyclogyl                 q5 min. X 4 |
| | | 10% Neosynephrine           O.S. |
| | | Acular LS - gtts 1 O.S.  q 15 min til surgery |
| | | Send all eye meds to O.R. with patient |
| | | PC IOL Alcon |

☐ CHECK HERE IF GENERIC OR FORMULARY EQUIVALENT IS NOT ACCEPTABLE        PHYSICIAN'S ORDERS

**BAPTIST SURGERY CENTER**

## HISTORY & PHYSICAL EXAM

Patient Name: _Landrum Johnny_  Age: _50_  Date: _6-7-06_

Chief Ophthalmic Complaint: _Gradual ↓ vision OS, interfering with lifestyle, reading, working, watching TV_

Past History: _Retinal Detachment OS 10-12 yrs ago, Surg for RD_
_HBP_

Family History: _Neg_

Medications: _Zantac 300mg i tid_  Allergies: _NKA_
~~Motrin~~ _Naprosyn 375mg i bid prn, Chlorpheniramine Maleate 4mg, Cardura 2mg i hs, Vasotec 10mg i bid, Asa 81mg i qd i bid_

**GENERAL PHYSICAL EXAM:**

ENT: _airway patent_  Neck: _supple_

Cardiac: _RR S̄ō_

Lungs: _clr_

Abdomen: _soft_  Extremities: _____

Neurological: _alert, cooperative, oriented, appropriate affect_

Other Abnormalities: _____

**OCULAR EXAM:**

Best VA:  OD: _20/40_  OS: _CFS'_  IOP:  OD: _14_  OS: _14_

External Exam: _____  Pupils: _3/3 intact_

EOM: _EX=0, Full V_

Slit Lamp: OD: _cornea cl_  OS: _cornea cl_
  _AC deep & cl_    _AC deep & cl_
  _Lens clear_    _3+ NC cat - combined ca_

Fundus: OD: _peripap, halos - No_  OS: _poorly vis. - attached_
  _holes_

Diagnosis: _Combined Cataract OS_

Preoperative Indications: _↓ vision, interfering w/ lifestyle_

Signed by: _[signature]_  M.D. Date: _06 / 01 / 06_

_Faxed orders 6.14.06_
_10:00_
_SAB_

BSC 03/89



B0615700424     LANDRUM,JOHNNY
DOB: 03/03/56    Age:50Y  MR #:704362
Admit Date/Time: 06/07/06    0651A
567 JONES,JOHN ALLEN

Patient information



**Baptist** HEALTH

# POSTOPERATIVE
# PROGRESS RECORD

| Date | Time | |
|------|------|---|
| 06/07/06 | | **Surgeon:** _James_     **Assistant:** |
| | | **Preop Dx:** Cataract, macro rupture OS |
| | | **Postop Dx:** as above, dislocated lens |
| | | **Procedure:** _illegible_ ECCE + IOL OS |
| | | Local w/ sed |
| | | OP = C |
| | | |
| | | |
| | | **Findings:** Cataract was dislocated inf temporm Oy |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | **Specimen & Disposition:** ☐ Lab     ☐ Other |
| | | |
| | | **EBL:** |
| | | MODEL: MTA4U0 |
| | | POWER: **16.0 D** |
| | | LENGTH(∅T): 13.0mm |
| | | OPTIC(∅B): 5.5mm |
| | | SN: 715916.041     Alcon Laboratories, Inc. |
| | | INTERNATIONAL LABEL IOL/AC |
| | | **M.D. Signature:** |

UV

Form # PN 30009   Revised 05/13/05

PN 300

06/02/2005   09:07   3342869622                                      PAGE  03/97

| Name: **Landrum, Johnny** | ID: 62133-0 |
| Date of Birth: **03/03/1956** | Eye Surgeon: Frank C. Young III |
| Exam Date: **06/01/2006** | Formula: **Holladay** |

### Preoperative Data:

| | | **OD** |
|---|---|---|
| AL: **28.77 mm** | Refraction: | |
| K1: **42.51 D @ 158°** | Visual Acuity: | right |
| K2: **43.27 D @ 68°** | Eye Status: **phakic** | |
| opt. ACD: **3.37 mm** | Target. Ref.: **plano** | |

| SA60AT | | MTAU | | | |
|---|---|---|---|---|---|
| SF: | 1.52 | SF: | -0.31 | | |
| IOL (D) | REF (D) | IOL (D) | REF (D) | | |
| 7.5 | -1.14 | 6.5 | -1.14 | | |
| 7.0 | -0.80 | 6.0 | -0.75 | | |
| 6.5 | -0.46 | 5.5 | -0.36 | | |
| **6.0** | **-0.12** | **5.0** | **0.02** | | |
| 5.5 | 0.21 | 4.5 | 0.40 | | |
| 5.0 | 0.53 | 4.0 | 0.77 | | |
| 4.5 | 0.85 | 3.5 | 1.14 | | |

### Preoperative Data:

| | | **OS** |
|---|---|---|
| AL: **31.80 mm *** | Refraction: | |
| K1: **42.56 D @ 17°** | Visual Acuity: | left |
| K2: **44.41 D @ 107°** | Eye Status: **phakic** | |
| opt. ACD: **2.68 mm** | Target. Ref.: **plano** | |

| SA60AT | | MTAU | | | |
|---|---|---|---|---|---|
| SF: | 1.52 | SF: | -0.31 | | |
| IOL (D) | REF (D) | IOL (D) | REF (D) | | |
| -0.5 | -0.86 | 0.0 | -1.19 | | |
| -1.0 | -0.52 | -0.5 | -0.81 | | |
| -1.5 | -0.19 | -1.0 | -0.43 | | |
| **-2.0** | **0.13** | **-1.5** | **-0.05** | | |
| -2.5 | 0.45 | -2.0 | 0.32 | | |
| -3.0 | 0.77 | -2.5 | 0.69 | | |
| -3.5 | 1.09 | -3.0 | 1.06 | | |

Remark:     mp/ dr ja jones

*data entered in
from A-Scan
MP*

**Carl Zeiss IOLMaster™ V. 3.01**                    Printed on: 09/01/2006 at 03:55 PM.

06/02/2006   09:07   3342869622                                    PAGE



| Name: Landrum, John w | Date of Birth: 03/03/1956 |
| ID: 62133-6 | Exam Date: 06/01/2006 |

ZEISS

| | OD (right) | | axial length values | | OS (left) | |
|---|---|---|---|---|---|---|
| AL | SNR | AL | SNR | | | |
| 28.78 mm | 2.8 | | | | | |
| 28.78 mm | 5.8 | | | | | |
| 28.77 mm | 4.6 | | | | | |
| > 28.77 mm | < 8.4 | | | | | |
| 28.77 mm | 8.0 | | | | | |

average AL: 28.77 mm

| | OD (right) | | corneal curvature values | | OS (left) | |
|---|---|---|---|---|---|---|
| K1: 42.51 D @ 159° | 7.94 mm | | K1: 42.61 D @ 21° | 7.92 mm | | |
| K2: 43.27 D @ 69° | 7.80 mm | | K2: 44.41 D @ 111° | 7.60 mm | | |
| ΔD: -0.76 D @ 159° | | | ΔD: -1.80 D @ 21° | | | |
| K1: 42.43 D @ 170° | 7.95 mm | | K1: 42.56 D @ 19° | 7.93 mm | | |
| K2: 43.32 D @ 80° | 7.79 mm | | K2: 44.35 D @ 109° | 7.61 mm | | |
| ΔD: -0.87 D @ 170° | | | ΔD: -1.79 D @ 19° | | | |
| K1: 42.45 D @ 163° | 7.95 mm | | K1: 42.56 D @ 17° | 7.93 mm < | | |
| K2: 43.10 D @ 73° | 7.83 mm | | K2: 44.41 D @ 167° | 7.60 mm | | |
| ΔD: -0.65 D @ 163° | | | ΔD: -1.85 D @ 17° | | | |
| n: 1.3375 | | | n: 1.3375 | | | |

| | OD (right) | | | anterior chamber depth values | | OS (left) | | |
|---|---|---|---|---|---|---|---|---|
| 3.38 mm | 3.38 mm | 3.36 mm | | 3.56 mm | 2.67 mm | 2.67 mm | 2.67 mm | 2.69 mm | 2.70 mm |
| ACD: 3.37 mm | | | | | ACD: 2.68 mm | | | |

| | OD (right) | | white to white values | | OS (left) | |
|---|---|---|---|---|---|---|
| | | | | | | |

Remark:      mp/ dr ja jones

Carl Zeiss IOLMaster™ V. 3.01                          Printed on: 06/01/2006 at 03:46

06/02/2005  09:07    3342869622                                           PAGE  02/0

**Humphrey**

A COMPANY OF THE CARL ZEISS GROUP

HOLLADAY FORMULA
03:32 PM                    06-01-06
PATIENT: LANDRUM, JOHNNY
PHYSICIAN: HATCHER, HAROLD
SET 1

|         | IOL SELECTED |        | SF     |
|---------|--------------|--------|--------|
| MAIN    | SA60AT       |        | 1.52#  |
| ALT     | ALCON MTU    |        | -0.30# |

| (OP EYE)= OS |   OD   |   OS   |
|--------------|--------|--------|
| K1           | 42.51  | 42.56  |
| K2           | 43.27  | 44.41  |
| AL           | 28.89  | 31.90  |
| DESIRED      |        |        |
| RX           | 0.00   | 0.00   |

OD  (FELLOW)  MAIN LENS
    EMMETROPIA =     5.68
FOR DESIRED RX =     0.00
    AMETROPIA =     5.68

| IOL(D) | REF(D) | IOL(D) | REF(D) |
|--------|--------|--------|--------|
| 4.50   | 0.77   | 7.50   | -1.23  |
| 5.00   | 0.45   | 8.00   | -1.37  |
| 5.50   | 0.12   | 8.50   | -1.92  |
| 6.00   | -0.21  | 9.00   | -2.28  |
| 6.50   | -0.54  | 9.50   | -2.64  |
| 7.00   | -0.88  | 10.00  | -3.00  |

OD  (FELLOW)   ALT LENS
    EMMETROPIA =     4.92
FOR DESIRED RX =     0.00
    AMETROPIA =     4.92

| IOL(D) | REF(D) | IOL(D) | REF(D) |
|--------|--------|--------|--------|
| 3.50   | 1.06   | 6.50   | -1.22  |
| 4.00   | 0.69   | 7.00   | -1.62  |
| 4.50   | 0.32   | 7.50   | -2.02  |
| 5.00   | -0.06  | 8.00   | -2.42  |
| 5.50   | -0.44  | 8.50   | -2.35  |
| 6.00   | -0.83  | 9.00   | -3.25  |

- - - - - - - - - - - - - - - - - - - - - - - - - -

MODEL 820 REV. F

**Humphrey**

A COMPANY OF THE CARL ZEISS GRO

HOLLADAY FORMULA
03:32 PM                    06-01-0
PATIENT: LANDRUM, JOHNNY
PHYSICIAN: HATCHER, HAROLD
SET 1

|         | IOL SELECTED |        | SF     |
|---------|--------------|--------|--------|
| MAIN    | SA60AT       |        | 1.52#  |
| ALT     | ALCON MTU    |        | -0.30# |

| (OP EYE)= OS |   OD   |   OS   |
|--------------|--------|--------|
| K1           | 42.51  | 42.56  |
| K2           | 43.27  | 44.41  |
| AL           | 28.82  | 31.80  |
| DESIRED      |        |        |
| RX           | 0.00   | 0.00   |

* * * * * * * * * * * * *
* OS  (OP-EYE)  MAIN LENS
*     EMMETROPIA =    -1.79
* FOR DESIRED RX =     0.00
*     AMETROPIA =    -1.79
*

| IOL(D) | REF(D) | IOL(D) | REF( |
|--------|--------|--------|------|
| -2.00  | 0.14   | 1.00   | -1.  |
| -1.50  | -0.19  | 1.50   | -2.  |
| -1.00  | -0.52  | 2.00   | -2.  |
| -0.50  | -0.85  | 2.50   | -2.  |
| 0.00   | -1.19  | 3.00   | -3.  |
| 0.50   | -1.53  | 3.50   | -3.  |

* * * * * * * * * * * * *

O   (OP-EYE)   ALT LENS
    EMMETROPIA =    -1.56
FOR DESIRED RX =     0.00
    AMETROPIA =    -1.56

| IOL(D) | REF(D) | IOL(D) | REF(D) |
|--------|--------|--------|--------|
| -2.00  | 0.33   | 1.00   | -1.98  |
| -1.50  | -0.04  | 1.50   | -2.38  |
| -1.00  | -0.42  | 2.00   | -2.78  |
| -0.50  | -0.80  | 2.50   | -3.19  |
| 0.00   | -1.19  | 3.00   | -3.61  |
| 0.50   | -1.58  | 3.50   | -4.03  |

- - - - - - - - - - - - - - - - - -

MODEL 820 REV. F

**Baptist Medical Center South - Montgomery**
2105 East South Boulevard, Montgomery, Alabama 36116, Telephone: (334) 288-2100

### OPERATIVE REPORT

| | | | |
|---|---|---|---|
| **PATIENT NAME:** | LANDRUM, JOHNNY | **MR #:** | 704362 |
| **DOB:** | 03/03/1956 | **ACCT #:** | 615700424 |
| **ROOM:** | | **ADM DATE:** | 06/07/2006 |
| **PHYSICIAN:** | JOHN A. JONES III, M.D. | **DISC DATE:** | |

**DATE OF PROCEDURE:** 6/7/06

**DIAGNOSIS:** A 50-year-old male with a diagnosis of an immature cataract, left eye, dislocated cataract, lens, left eye.

**PROCEDURE:** Completed extracapsular cataract extraction with insertion of anterior chamber intraocular lens, left eye.

**SURGEON:** John A. Jones III, MD

**ANESTHESIA:** Local with IV sedation.

**COMPLICATIONS:** None.

**PROCEDURE:** Periocular injection was done by anesthesia in the holding area without complications. A Honan balloon was placed on the surface of the closed lid. Following this, he was wheeled into the operating theatre, and positioned underneath the operating microscope. He was prepped and draped in the usual manner for a left intraocular procedure. A speculum was placed between the lid. It was noted at this time that the cataractous lens was dislocated slightly inferiorly and temporally. It was noted that we would not be able to do the planned phacoemulsification. The eye was stabilized, and a stab incision was made from the peripheral cornea anteriorly. Phacodonesis minimally was noted. Viscoelastic was placed behind the lens, propelling it forward. The lens broke, but did not descend. The incision into the anterior chamber was widened, and a lens loop was placed behind the bulk of the lens, and the lens nucleus along with the majority of the lens was removed. The phacoemulsification machine was used to clear up the remaining cortex and lens capsule. An anterior chamber lens was going to be needed with his special ordered myopic pseudophacos, and us having no special ordered anterior chamber lens, it was decided to put in a lower powered lens and make adjustments as need be. An anterior chamber lens was placed in the anterior chamber, and placed in secure position. A

**OPERATIVE REPORT**

**Baptist Medical Center South - Montgomery**

| OPERATIVE REPORT |
| --- |

**NAME:**       LANDRUM, JOHNNY                    **MR #:**   704362
**PHYSICIAN:**   JOHN A. JONES III, M.D.

peripheral iridectomy was made. The anterior chamber was irrigated. The pupil was round. The incision into the anterior chamber was closed with 10-0 nylon cross stitch. He tolerated the procedure well with no formal vitreous loss, and returned to the recovery room in good condition.

JOHN A. JONES III, M.D.

TR: JJ /PB   D: 06/07/2006 09:52:00   T: 06/07/2006 10:31:10   JOB: 6912929 /6490

*Copies*

DR. JOHN ALLEN JONES, III          ~~BAPTIST~~ *Morrow* TOWERS 281-6688
                                              *Suite 804*

*Johnny Landrum ( Bibb Corr. Fac.*

PRE-OP INSTRUCTIONS                *to 20/20 Ophthalmic Associates for*

1.  THE DAY BEFORE YOUR SURGERY GO ~~BY THE HOSPITAL FOR LAB WORK.~~ *A Scan*
    *Thursday, June 1, 2006* at *3:00*

2.  DO NOT EAT OR DRINK ANYTHING AFTER MIDNIGHT THE DAY BEFORE
    YOUR SURGERY. *Take High Blood Pressure Med w/ Sip of wat*

3.  BRING ALL YOUR MEDICATION TO THE HOSPITAL WITH YOU. *in a.m.*

4.  ARRIVE AT *Same Day Surgery Center*          BY *7:00am*
    ON *Wed., June 7, 2006* .       *1st Floor Morrow*
                                                  *Towers*
5.  IF YOU HAVE ANY QUESTIONS, PLEASE CALL OUR OFFICE.
                                    *2055 E.S. Blvd.*
                                    *Montgomery, AL 36111*

POST-OP INSTRUCTIONS

DAY 1

1.  KEEP SHIELD OVER OPERATED EYE.

2.  TAKE REGULAR MEDICATIONS IN USUAL WAY, UNLESS DIRECTED OTHERWISE.

3.  KEEP HEAD ELEVATED AT LEAST 15 DEGREES (2 PILLOWS).

4.  TRY NOT TO SLEEP ON OPERATED SIDE TONIGHT.

5.  NO STRENUOUS ACTIVITY; NO BENDING OR STOOPING WITH YOUR HEAD
    LOWER THAN YOUR HEART.

6.  TAKE TYLENOL TABLETS 2 EVERY 4 HOURS IF NEEDED.

7.  AT YOUR DRUGSTORE BUY THE FOLLOWING:

    A.  STERILE COTTON BALLS
    ~~B.  1/2 INCH PAPER TAPE~~
    C.  BOTTLE OF STERILE PERSERVATIVE-FREE SALINE (SENSITIVE EYES
        OR UNISOL SALINE – USED FOR RINSING CONTACT LENSES).
    D.  BRING THE ABOVE
        TO YOUR FOLLOW-UP APPOINTMENT.

8.  NOTIFY DR. JONES IF UNUSUAL PAIN OR BLEEDING OCCURS.

9.  KEEP FOLLOW-UP APPOINTMENT ON *Thursday, June 8, 2006*
    AT *9:00am*.

10. IT IS BEST IF SOMEONE IS WITH YOU THE NIGHT AFTER SURGERY.

JOHN ALLEN JONES, M.D., F.A.C.S.
OPHTHALMOLOGY - OTOLARYNGOLOGY

JOHN ALLEN JONES, III, M.D., F.A.C.S.
OPHTHALMOLOGY

**DRS. JONES & JONES, P.A.**
2055 EAST SOUTH BOULEVARD, SUITE 804
MONTGOMERY, ALABAMA 36116

TELEPHONE 281-6688

**REFERRAL**

Date: June 1, 2006

Patient: Johnny Landrum

D.O.B. 3/3/56

Reason for Referral: A Scan OS

Doctor or Facility: 20/20 Ophthalmic Associates

Please send report to above address or fax to 334-281-0324.

**Thank you**

8

**UM ~ PRE-APPROVAL REVIEW FORM**

PHS

Form must be Complete and Legible. You must Type or Print
Please send this form with the Authorization Letter to the service provider at the time of the Appointment

## DEMOGRAPHICS

| | | |
|---|---|---|
| **Site Name & Number:** Bibb | **Patient Name: (Last, First,)** Landrum, Johnny | **Date: (mm/dd/yy)** 5, 22, 06 |
| **Site Phone #** (205) 225-0121 | **Alias: (Last, First,)** | **Date of Birth: (mm/dd/yy)** 3, 03, 56 |
| **Site Fax #** (205) 225-0338 | **Inmate #** 134871 | **PHS Custody Date: (mm/dd/yy)** 09, 15, 03 |
| **Will there be a charge?** ☑Yes ☐ No   **Sex** ☑Male ☐ Female | **SS Number** 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 | **Potential Release Date: (mm/dd/yy)** 12, 08, 02 |
| **Responsible party:** ☑PHS ☐ Auto Ins. | ☐ Health Ins.(Excludes Medicare/Medicaid Managed Care alternative plans ) ☐ Other, be specific (Excludes Medicare, Medicaid and Veterans Administration Services): | |

## CLINICAL DATA

**Requesting Provider:** ☑Physician ☐ NP, PA ☐ Dental

James P Whitley

**Facility Medical Director Signature and Date:**

Jenn

☐ Service meets criteria for "approval via protocol"

Place a check mark (✓) in the Service Type requested (one only) and complete additional applicable fields.

☑Office Visit (OV)   ☐ X-ray (XR)   ☐ Scheduled Admission (SA)
☐ Outpatient Surgery (OS)   ☐ Dialysis (DA)

☑Routine   ☐ Urgent

**Estimated Date of Service (mm/dd/yy)** ___/___/___

(This starts the approval window for the "open authorization period")

**Multiple Visits/Treatments:**  ☐ Radiation Therapy  ☐ Chemotherapy
**Number of Visits/Treatments:** 1  ☐ Other:

**Specialist referred to:** DR. Jones

**Type of Consultation, Treatment, Procedure or Surgery:**
need (A-Scan) prior to Surgery
OS cataract

**Diagnosis:**
**ICD-9 code:**

You must include copies of pertinent reports such as lab results, x-ray interpretations and specialty consult reports with this form.

☐ Pertinent Documents have been attached and faxed.

**History of Illness/injury/symptoms with Date of Onset:**
He saw ophth (Dr Jones)
for cataract (OS) & needs an
A-Scan performed

**Results of a complaint directed physical examination:**
mate in MD
OS cataract

**Previous treatment and response (including medications):**
∅

***For security and safety, please do not inform patient of possible follow-up appointments***

## UM DETERMINATION:

☐ Alternative Treatment Plan (explain here):

☐ More Information Requested: (See Attached)

☐ Resubmitted with requested information.

☐ Off-site Service Recommended and Authorized

**Date resubmitted:** ___/___/___

**Regional Medical Director Signature,**
**printed name and date required:** _____  (mm/dd/yy)

Do not write below this line. For Case Manager and Corporate Data Entry ONLY.

| **Cert Type:** | **Bed Class:** | **CPT code:** | **UR Auth #:** |
|---|---|---|---|

05a – UM Referral review form

*[signature]* HSA

## UTILIZATION MANAGEMENT REFERRAL REVIEW FORM

Form must be Complete and Legible. You must Type or Print
*Please send this form with the Authorization Letter to the service provider at the time of the Appointment*

**PHS**

### DEMOGRAPHICS

| | | |
|---|---|---|
| **Site Name & Number:** BIBB # 831 | **Patient Name: (Last, First)** Landrum, Johnny | **Date: (mm/dd/yy)** 12,28,05 |
| **Site Phone #** 205-225-0121 | **Alias: (Last, First)** | **Date of Birth: (mm/dd/yy)** 3,03,56 |
| **Site Fax #** 205-225-0338 | **Inmate #** 134871 | **PHS Custody Date: (mm/dd/yy)** 09,15,03 |
| **Will there be a charge?** ☑ Yes ☐ No  **Sex** ☑ Male ☐ Female | **SS Number** _ _ _ - _ _ - _ _ _ _ | **Potential Release Date: (mm/dd/yy)** 12,08,07 |

**Responsible party:** ☐ PHS  ☐ Auto Ins.  ☐ Health Ins.(Excludes Medicare/Medicaid Managed Care alternative plans )  ☐ Other, be specific (Excludes Medicare and Medicaid):_____

### CLINICAL DATA

**Requesting Provider:** ☑ Physician  ☐ NP, PA  ☐ Dental

James P Whitley

**Facility Medical Director Signature and Date:**

☐ Service meets criteria for "approval via protocol"

**Place a check mark (✓) in the Service Type requested (one only) and complete additional applicable fields.**

☑ Office Visit (OV)  ☐ X-ray (XR)  ☐ Scheduled Admission (SA)
☐ Outpatient Surgery (OS)  ☐ Dialysis (DA)
☑ Routine (soon)  ☐ Urgent 9:45am

**Estimated Date of Service (mm/dd/yy)** 01,23,06
(This starts the approval window for the "open authorization period")

**Multiple Visits/Treatments:** ☐ Radiation therapy ☐ Chemotherapy
**Number of Visits/Treatments:** 1  ☐ Other:

**Specialist referred to:** ophth. Dr. Jones

**Type of Consultation, Treatment, Procedure or Surgery:**
eval. for possible cataract surgery

OS cataract

**Diagnosis:**
**ICD-9code:**

You must include copies of pertinent reports such as lab results, x-ray interpretations and specialty consult reports with this form.
☐ Pertinent Documents have been attached and faxed.

**History of illness/injury/sypmtoms with Date of Onset:**
He saw optometry here on 12/8/05 + he recommends ophth. eval for OS cataract

**Results of a complaint directed physical examination:**
OS cataract

**Previous treatment and response (including medications):**
Visine eye drops

***For security and safety, please do not inform patient of possible follow-up appointments***

**UM DETERMINATION:**  ☐ Offsite Service Recommended and Authorized

☐ Alternative Treatment Plan (explain here):

☐ More Information Requested: (See Attached)

☐ Resubmitted with requested information  **Date resubmitted:** _ _ / _ _ / _ _

**Regional Medical Director Signature, printed name and date required:**  _ _ / _ _ / _ _ [mm/dd/yy]

Do not write below this line. For Case Manager and Corporate Data Entry ONLY.

| Cert Type: | Med Class: | UR Auth #: 15714946 |
|---|---|---|

UM Referral review form 2-05-2004.xls

01/03/2006 TUE 14:24 FAX                                                    015/022
12/29/2005 THU 16:30 FAX 12052250338 BIBB                                   025/037

## UTILIZATION MANAGEMENT REFERRAL REVIEW FORM
Form must be Complete and Legible. You must Type or Print
Please send this form with the Authorization Letter to the service provider at the time of the Appointment

**PHS**

### DEMOGRAPHICS

| Site Name & Number: | Patient Name: (Last, First) | Date: (mm/dd/yy) |
|---|---|---|
| BIBB # 831 | Landrum, Johnny | 12,28,05 |
| Site Phone #: | Alias: (Last, First) | Date of Birth: (mm/dd/yy) |
| 205-225-0121 | | 3,03,56 |
| Site Fax #: | Inmate #: | PHS Custody Date: (mm/dd/yy) |
| 205-225-0338 | 134871 | 09,15,03 |
| Will there be a charge? ☑ Yes ☐ No | Sex ☑ Male ☐ Female | SS Number: | Potential Release Date: (mm/dd/yy) 12,08,07 |

Responsible party: ☑ PHS ☐ Auto Ins. ☐ Health Ins (Excludes Medicare/Medicaid Managed Care alternative plans) ☐ Other, be specific (Excludes Medicare and Medicaid):

### CLINICAL DATA

| Requesting Provider: ☑ Physician ☐ NP, PA ☐ Dental | History of Illness/Injury/symptoms with Date of Onset: |
|---|---|
| James P Whitley | He saw optometry here on 12/8/05 + he recommends ophth eum for OS cataract |
| Facility Medical Director Signature and Date: | |
| ☐ Service meets criteria for "approval via protocol" | |

Place a check mark (√) in the Service Type requested (one only) and complete additional applicable fields.

| ☑ Office Visit (OV) | ☐ X-ray (XR) | ☐ Scheduled Admission (SA) |
| ☐ Outpatient Surgery (OS) | ☐ Dialysis (DA) | |
| ☑ Routine (500N) | | ☐ Urgent |

| Results of a complaint directed physical examination: |
| OS Cataract |

Estimated Date of Service (mm/dd/yy) _/_/_
(This starts the approval window for the "open authorization period")

| Multiple Visits/Treatments: | ☐ Radiation therapy |
| | ☐ Chemotherapy |
| Number of Visits/Treatments: 1 | ☐ Other |

Specialist referred to: ophth - Dr. Jones

Type of Consultation, Treatment, Procedure or Surgery:
eval. for possible cataract surgery

Previous treatment and response (including medications):
Visine eye drops

Diagnosis: OS cataract
ICD-9 code: 366.9

You must include copies of pertinent reports such as lab results, x-ray interpretations and specialty consult reports with this form.
☐ Pertinent Documents have been attached and faxed.

***For security and safety, please do not inform patient of possible follow-up appointments***

### UM DETERMINATION:
☐ Alternative Treatment Plan (explain here):
☑ Online Service Recommended and Authorized

☐ More Information Requested: (See Attached)     Date Authorized: _/_/_
☐ Resubmitted with requested information.

Regional Medical Director Signature, printed name and date required: _____     12 30, 05

Do not write below this line. For Case Manager and Corporate Data Entry ONLY.

| Cert Type: OL | OV | Med Class: 99201 | UR Auth #: 15714946 |

UM Referral review form 2-05-2004.xls

DRS. JONES AND JONES, P.A.
JOHN ALLEN JONES, III, M.D.
2055 EAST SOUTH BLVD., SUITE 804
MONTGOMERY, ALABAMA 36116
334-281-6688
FAX 334-281-0324

*205-225 0338-*

DATE: _____

TO: *Ophelia* _____

FROM: *Sally Dr. Jones* _____

RE: *Johnny Landrum - Surgey*
*m.k. Silas* _____

TOTAL PAGES (INCLUDING COVER SHEET) *1*

CONFIDENTIALITY NOTE

The information contained in this facsimile message is legally privileged
and confidential information intended only for the use of the individual
or entity named above.  If the reader of this message is not the intended
recipient, you are hereby notified that any distribution, dissemination, or
copying of this facsimile is strictly prohibited.  If you received this
facsimile in error, please notify us immediately at the above telephone
number and return the original facsimile by mail.
                    Thank you.

*Thursday 6-1-06 - 1:30 - Landrum+ Silas- Dr. Jones*
*Thursday 6-1-06  3:00  Landrum+ Silas - A Scan - 20/20 get*
*                                                    authoriz.*
*Wednesday 6-7-06- Surgery Landrum+ Silas - Surgey Center*
*Thursday - 6-8-06 Surgey followup - Dr. Jones office -*

# Informed Consent for Cataract Operation and/or Implantation of Intraocular Lens

## INTRODUCTION

This information is given to you so that you can make an informed decision about having eye surgery. Take as much time as you wish to make your decision about signing this informed consent. You have the right to ask questions about any procedure before agreeing to have the operation.

Except for unusual cases, a cataract operation is indicated only when you cannot function adequately due to poor sight produced by the cataract. You must remember that the natural lens within your own eye with a *slight* cataract, although not perfect, has some distinct advantages over any man-made lens.

After your doctor has told you that you have a cataract, you and your doctor are the only ones who can determine if or when you should have a cataract operation—based on your own visual needs, and medical considerations, unless you have an unusual cataract that may require immediate surgery.

## ALTERNATIVE TREATMENTS

I understand I may decide *not* to have a cataract operation *at all*. However, should I decide to have an operation, I understand these are the three methods of restoring useful vision after the operation:

1. SPECTACLES (GLASSES): Cataract spectacles required to correct your vision are usually thicker and heavier than conventional eyeglasses. Cataract spectacles increase the size of objects by about 25%; and clear vision is obtained through the cen-

tral part of cataract spectacles, which means you must learn to turn your head to see clearly on either side. Cataract spectacles usually *cannot* be used if a cataract is only in *one eye* (and the other is normal) because they may cause double vision. However, cataract spectacles have been, the most common method of correcting vision after cataract surgery.

2. CONTACT LENS: A hard or soft contact lens increases the apparent size of objects only about 8%. Handling of a contact lens is difficult for some individuals. Most lenses must be inserted and removed daily and not everyone can tolerate them. For near tasks, eyeglasses (not cataract spectacles) may be required in addition to contact lenses.

3. INTRAOCULAR LENS: This is a small plastic artificial lens surgically placed inside the eye, permanently. Intraocular lenses do not require daily handling. With the intraocular lens there is no apparent change in the size of objects seen. Conventional eyeglasses (not cataract spectacles) are required in addition to an intraocular lens.

## CONSENT FOR OPERATION

In giving my permission for a cataract extraction and/or for the implantation of an intraocular lens in my eye, I declare I understand the following information:

1. Cataract surgery, by itself, means the removal of the natural lens of the eye by a surgical technique. In order for an intraocular lens to be implanted in my eye, I understand I must have cataract surgery performed either at the time of the lens implantation or before lens implantation.

2. If an intraocular lens is implanted, it is done by surgical method. It is intended that the small plastic lens will be left in my eye permanently.

3. The results of surgery in my case cannot be guaranteed.

4. At the time of surgery, my doctor may decide not to implant an intraocular lens in my eye even though I may have given prior permission to do so.

5. **Complications of Surgery to Remove the Cataract:** As a result of the surgery, it is possible that my vision could be made worse. In some cases, complications may occur weeks, months or even years later. Complications may include hemorrhage (bleeding), loss of corneal clarity, infection, detachment of the retina, glaucoma, and/or double vision. These and other complications may occur whether or not a lens is implanted and may result in poor vision, total loss of vision or loss of the eye.

6. **Specific Complications of Lens Implantations:** Insertion of an intraocular lens may induce complications which otherwise would not occur. In some cases complications may develop during surgery from implanting the lens, or days, weeks, months or even years later. Complications may include loss of corneal clarity, infection, uveitis, iris atrophy, glaucoma, bleeding in the eye, inability to dilate the pupil, dislocation of the lens and retinal detachment.

7. At some future time, the lens implanted in my eye may have to be repositioned or removed surgically.

8. **Complications of Surgery in General:** As with all types of surgery, there is the possibility of other complications due to anesthesia, drug reactions or other factors which may involve other parts of my body, including the possibility of brain damage or even death. Since it is impossible to state every complication that may occur as a result of surgery, the list of complications in this form is incomplete.

The basic procedures of cataract surgery and the advantages and disadvantages, risks and possible complications of alternative treatments have been explained to me by the doctor. Although it is impossible for the doctor to inform me of every possible complication that may occur, the doctor has answered all my questions to my satisfaction. I understand that periodic visits to the doctor by me will be required for at least one year to assess the results of the operation.
In signing this informed consent for cataract operation, and/or implantation of intraocular lens, I am stating I have read this informed consent (or it has been read to me) and I fully understand it and the possible risks, complications and benefits that can result from the surgery.

If I decide to have an operation, I agree to have the type of operation listed below which I have indicated by my signature:

(1) I wish to have a Cataract Operation WITH / WITHOUT an Intraocular Lens Implant.

Patient's Signature ___*Johnny Landrum*___

(2) Since my Cataract was previously removed and I have been informed by the doctor that my eye is medically acceptable for lens implantation, I wish to have an Intraocular Lens Implant.

OS

Patient's Signature _____
Patient's Name (Printed) _Johnny Landrum_____ Age _50_
Date _6/1/06_ Time _2:09_ Place _2055 E.S. Blvd._
Witness' Signature _Charolette Bassett_____
Doctor's Signature _____

05/10/2006 WED 12:23  FAX 12052250338 BIBB                              ✆001/003



## PRISON HEALTH SERVICES, INC.

TO:                                    FROM: SdHerring

COMPANY: Bibb/PHS              DATE: 5-10-06

FAX NUMBER: 334-581-0324      TOTAL NO. OF PAGES INCLUDING COVER:

PHONE NUMBER: 1-205-921-5052 ext 229

RE: Johnny Landrum, Mr. Siler HP med

☐ URGENT  ☑ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ PLEASE RECYCLE

NOTES/COMMENTS:
If you receive this in error, please call        . Thank you.

PHS ALABAMA DOC◆              ◆        ◆      AL ◆

05/10/2006 WED 12:23  FAX 12052250338 BIBB @002/003

| Facility Name:   Bibb Correctional Facility | | | Month/Year of Charting: | | | | | | | | | | | | 05/06 | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| | Hour | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

A & D Ointment  Ointment     1

Use as directed daily

T tube /week
   (PRN)

Start Date:  03-31-2006    Prescriber:  Whitley, James
Stop Date:  07-08-2006     RX #:  251355679

---

Chlorpheniramine Maleate 4MG Tab  60.00

Take 1 tablet(s) by mouth twice daily

Start Date:  03-31-2006    Prescriber:  Whitley, James
Stop Date:  05-29-2006     RX #:  251355684

---

Naprosyn 375MG Tab     60.00

Take 1 tablet(s) by mouth twice daily as needed

Start Date:  03-31-2006    Prescriber:  Whitley, James
Stop Date:  07-08-2006     RX #:  251355686

---

Zantac 300MG Tab   90.00

Take 1 tablet(s) by mouth Three Times Daily

Start Date:  03-31-2006    Prescriber:  Whitley, James
Stop Date:  07-08-2006     RX #:  251355689

---

Cardura 2MG Tab     30.00

Take 1 tablet(s) by mouth at bedtime

Start Date:  03-31-2006    Prescriber:  Whitley, James
Stop Date:  07-08-2006     RX #:  251355691

---

Vasotec 10MG Tab    60.00

Take 1 tablet(s) by mouth twice daily

Start Date:  04-19-2006    Prescriber:  Whitley, James
Stop Date:  07-27-2006     RX #:  251420570

---

| Diagnoses | Nurse's Signature | Initial | Nurse's Signature | Initial | Documentation Codes |
|---|---|---|---|---|---|
| | C. Kennedy | ck | | | 1. Discontinued Order |
| Allergies | | | | | 2. Refused |
| | | | | | 3. Patient out of facility |
| | | | | | 4. Charted in Error |
| | | | | | 5. Lock Down |
| Housing Unit:  Population | | | | | 6. Self Administered |
| Patient ID Number:  134871 | | | | | 7. Medication out of Stock |
| Patient Name: | | | | | 8. Medication Held |
| | | | | | 9. No Show |
| **Landrum, Johnny** | | Date of Birth: | | | 10. Other |

05/10/2006 WED 12:25 FAX 12052250333 BIBB                              @003/003

| Facility Name: Bibb Correctional Facility | | Month/Year of Charting: 05/06 |
|---|---|---|

Aspirin 81MG Chew Tab    30.00

Take 1 chew tab(s) by mouth daily

9A

Start Date: 04-19-2006    Prescriber: Whitley, James
Stop Date: 07-27-2006    RX #: 251420700

| Diagnosis | Nurse's Signature | Init. | Nurse's Signature | Init. | Documentation Code |
|---|---|---|---|---|---|
| | C. Kemply | CK | | | 1. Discontinued Order |
| Allergies | | | | | 2. Refused |
| | | | | | 3. Patient out of facility |
| | | | | | 4. Charted in Error |
| | | | | | 5. Lock Down |
| Housing Unit: Population | | | | | 6. Self Administered |
| Patient ID Number: 124971 | | | | | 7. Medication out of Stock |
| Patient Name: | | | | | 8. Medication Held |
| **Landrum, Johnny** | | Date of Birth: | | | 9. No Show |
| | | | | | 10. Other |

Authorization and consent for use or disclosure
of Protected Health Information

JOHN ALLEN JONES, II, M.D.
OPHTHALMOLOGY

DRS. JONES & JONES, P.A.
2093 EAST SOUTH BOULEVARD, SUITE 604
MONTGOMERY, ALABAMA 36116

TELEPHONE 281-6636

Effective April 14, 2003

Your medical information is important and confidential. Our ethics
and policies require that your information be held in strict confidence.

I consent to treatment necessary for my care or the care of my child.

I authorize the release of all medical records to the referring and
family physicians and to my insurance company, if applicable.

I allow fax transmittal of my medical records, if necessary.

I acknowledge full financial responsibility for services rendered
by John Allen Jones, III, M.D. .

I understand that payment of charges incurred is due at the time of
service unless other definite financial arrangements have been made
prior to treatment.

I agree to pay all reasonable attorney fees and collection costs in
the event of default of payment of my charges.

I further authorize and request that insurance payments be made directly
to John Allen Jones, III, M.D. should they elect to receive such payment.

I have read and fully understand the above consent for treatment,
financial responsibility, release of medical information, and insurance
authorization.

I acknowledge that I have read and understand the notice of privacy
practices.

I, _____ give authorization to discuss medical
information with _____
                          Name                              Relationship
_____
    Phone Number

1/23/06
Date

_Johnny Sanders_
Signature of patient

_____
Signature of parent if minor

If patient or personal representation is unable or refuses to sign the form, document the reason on this form.
Place this form in the patient's medical record.

| DATE | REFERENCE | DESCRIPTION | CHARGES | PYMNTS. CREDITS | ADJ. | BALANCE | PREVIOUS BALANCE | NAME |
|------|-----------|-------------|---------|-----------------|------|---------|------------------|------|
| 6306 | III. | C E → OX | 156 00 | 156 00 | | — | | Johnny Jordan |

THIS IS YOUR **RECEIPT** FOR THIS AMOUNT ▮    ▮ THIS IS A **STATEMENT** OF YOUR ACCOUNT TO DATE

| OFFICE SERVICES | | SPECIAL SERVICES | | CONTACT LENS | |
|---|---|---|---|---|---|
| 1 New Patient | 99201 | 27 Visual Fields | | 56 C.L. - Bandage | 92070 |
| 2 | 99202 | 28 Visual Fields (Automated) | 92082 | 57 C.L. - both eyes | 92310 |
| 3 | 99203 | 29 Gonioscopy | 92020 | 58 C.L. - one eye | |
| 4 | 99204 | 30 A-Scan | 76516 | 59 C.L. - aphakia/one eye | 92311 |
| 5 | 99205 | 31 Schirmer Test (tear test) | | 60 C.L. - aphakia/both eyes | 92312 |
| 6 Established Patient | 99211 | 32 Photos - external | 92285 | 61 C.L. - modification | 92325 |
| 7 | 99212 | 33 Photos - Fundus | 92250 | 62 C.L. Replacement | 92326 |
| 8 | 99213 | 34 Color Vision | 92283 | 63 Collagen Lens | V2599 |
| 9 | 99214 | 35 Ophthalmoscopy Extended | 92225 | | |
| 10 | 99215 | 36 Glare/Contrast Sensitivity | 92284 | | |
| 11 Second Opinion | 99273 | 37 Orthoptic Training | 92065 | | |
| 12 Intermed. Exam New | 92002 | 39 | | | |
| 13 Intermed. Exam Est | 92012 | | | OTHER | |
| 14 Comp. Eye Exam New | 92004 | OFFICE SURGERY | | | |
| 15 Comp. Eye Exam Est | 92014 | 40 Cornea Culture | 65430 | | |
| 16 Refraction | 92015 | 41 Corneal Debridement | 65435 | | |
| 17 Neuro-Ophth. Exam | 92060 | 42 F.B. Removal - corneal | 65222 | | |
| 18 Post-Op O.V. | | 43 F.B. Removal - conjunctiva | 65205 | | |
| 19 Glasses Check | | 44 Tear Duct Dilation | 68801 | | |
| 20 Ins. Forms | | 45 Tear Duct - Probe | 68820 | | |
| 21 Med. Data Review | | 46 Punctual Occlusion | 68760 | | |
| 22 Consultations | 99241 | 47 Punctual Plugs | 68899 | | |
| 23 | 99242 | 48 Removal small lesion, lids | 67840 | | |
| 24 | 99243 | 49 Chalazion-single | 67800 | | |
| 25 | 99244 | 50 Chalazion-mult/same lid | 67801 | | |
| 26 | 99245 | 51 Chalazion-multiple | 67805 | | |
| | | 52 Trichiasis/Epilation | 67820 | | |
| | | 53 Retrobulbar Inj. | 67500 | | |
| | | 54 Subtenon's Inj. | 67515 | | |
| | | 55 Subconj. Inj. | 68200 | | |

- Ksicca 370.33
- Amblyopia 368.00
- Aphakia 379.31
- Astigmatism 367.21
- Bell's Palsy 351.0
- Black Eye 921.0
- Blepharitis 373.00
- Blepharochalasis 374.34
- Blow Out fracture 802.6
- Bullous Keratopathy 371.23
- Cataract:  OS
  - Combined 366.19
  - Congenital Cataract 743.30
  - Posterior subcapsular 366.14
  - Cortical 366.15
  - Nuclear 366.16
  - Traumatic 366.20
- Central serous retinopathy 362.41
- Chalazion 373.2
- Chorioretinitis 363.20
- Histoplasmosis 115.90
- Toxoplasmosis 130.2
- Conjunctivitis:
  - Unspecified 372.00
  - Catarrhal 372.03
  - Vernal 372.13
  - Allergic 372.14
  - Viral 077.99
  - GPC / Chemical / Atopic 372.05
  - Conjunctival abrasion 918.2
  - Subconjunctival hemorrhage 372.72
  - Convergence insufficiency 378.83
  - Contusion, eyeball 921.3
  - (hyphema, traumatic)
- Corneal abrasion 918.1
- Corneal Degeneration 371.40
- Corneal dystrophy 371.50
- Corneal edema 371.20
- Corneal Laceration:
  - Without prolapse 871.0
  - With prolapse 871.1
  - Corneal scar/opacity 371.00
  - Corneal Ulcer 370.00
  - Cystoid macular edema (CME) 362.53

- Dacryocystitis 375.32
- Dacryostenosis 375.56
- Diabetic Retinopathy
  - Background 362.01
  - Proliferative 362.02
  - Diabetic Neuropathy 250.6
  - IDDM 250.01
  - NIDDM 250.02
- Diplopia 368.2
- Ectropion
  - Senile 374.11
  - Cicatricial 374.14
- Entropion:
  - Senile 374.01
  - Cicatricial 374.04
  - Episcleritis 379.01
  - Epithelialis 370.21
- Esotropia:
  - accommodative 378.35
  - alternating 378.05
  - intermittent 378.22
  - Monocular 378.01
- Exotropia:
  - alternating 378.15
  - intermittent 378.24
  - Monocular 378.11
- Foreign Body:
  - conjunctival 930.1
  - corneal 930.0
  - intraocular 8716
- Glaucoma:
  - suspect 365.04
  - angle-closure 365.22
  - Neovascular 365.63
  - open angle 365.11
  - ocular inflammation 365.62
  - ocular trauma 365.65
  - Headache 784.0
  - Herpes Zoster 053.20
  - Herpetic Ulcer 370.04
  - Hordeolum 373.11
  - Hyphema 364.41
  - Hyperopia 367.0
  - Hypertropia 378.31

- IOL malposition 996.53
- Injected Eye 372.73
- Iritis 364.00
- Iritis, recurrent 364.02
- Iritis, Traumatic 364.04
- Keratoconjunctivitis 370.40
- Keratoconjunctivitis. exposure 370.34
- Keratitis 370.21
- CL Assoc. - Keratitis 371.82
- Keratoconus 371.60
- Laceration, eyelid 870.0
- Lesion:
  - benign 216.1
  - malignant 173.1
- Macula Degeneration (Dry) 362.51
- Macula Degeneration (Wet) 362.52
- Macula Drusen 362.57
- Macula Hemorrhage 363.61
- Macula hole 362.54
- Macula scar 362.32
- Migraine Prodrome 346.80
- Myopia 367.1
- Normal Eye Examination 720.0
- Nystagmus 379.50
- Opaque Posterior capsule 366.53
- Optic atrophy 377.10
- Optic neuritis 377.30
- Ischemic Optic Neuropathy 377.41
- Papilledema 377.00
- Photophobia 368.13
- Phthisis bulbi 360.41
- Pinguecula 372.51
- Preretinal fibrosis 362.56
- Pseudo Tumor 376.11
- Pain Around Eye 379.91
- Pterygium 372.40
- Ptosis 374.30
- Recurrent Erosion 371.42
- Refractive Error 367.9
- Renal Retinitis 363.13
- Retinal Detachment, recent 361.05
- Retinal Detachment, old 361.06
- Retinal Edema 362.83
- Retinal Hemorrhage 362.81

- Retinal Hole 361.3
- Retinal Scar 363.3
- Retinal Tear 361.3
- Retinal Artery Occlusion 362.3
- Retinal Vein Occlusion 362.3
- Retinopathy, Unspecified 362.1
- ROP 362.2
- Scleritis 379.0
- Scotoma:
  - arcuate 368.4
  - central 368.4
  - heteronymous 368.4
  - homonymous hemianopsia 368.4
- Sjogren's (Sicca) Syndrome 710.2
- Trichiasis 374.0
- Vitreous Detachment 379.2
- Vitreous Floaters 379.2
- Visual Discomfort 368.1

RETURN: ___ Days ___ Weeks ___ Months

Date of Service _8 / 3 / 06_

**DRS. JONES & JONES, P.A**
2055 EAST SOUTH BLVD.
SUITE 804
MONTGOMERY. AL 36116
TELEPHONE (334) 281-6688
IRS # 63-0637131

John Allen Jones, III, M.D., F.A.C.S.
Ophthalmology
BC # 3292

DOCTOR'S SIGNATURE

APPROVED OMB-0938-0208

PLEASE
DO NOT
STAPLE
IN THIS
AREA

PRISON HEALTH CARE
PO BOX 967
BRENTWOOD TN
37027

## HEALTH INSURANCE CLAIM FORM

PICA

| 1. MEDICARE | MEDICAID | CHAMPUS | CHAMPVA | GROUP HEALTH PLAN | FECA BLK LUNG | OTHER | 1a. INSURED'S I.D. NUMBER (FOR PROGRAM IN ITEM 1) |
|---|---|---|---|---|---|---|---|
| (Medicare #) | (Medicaid #) | (Sponsor's SSN) | (VA File #) | (SSN or ID) | (SSN) | X (ID) | 134871 |

2. PATIENT'S NAME (Last Name, First Name, Middle Initial)
**LANDRUM, JOHNNY**

3. PATIENT'S BIRTH DATE   SEX
03031956   M X   F

4. INSURED'S NAME (Last Name, First Name, Middle Initial)
**LANDRUM, JOHNNY**

5. PATIENT'S ADDRESS (No., Street)
**565 BIBB LANE**

6. PATIENT RELATIONSHIP TO INSURED
Self   Spouse   Child   Other

7. INSURED'S ADDRESS (No., Street)
**SAME**

CITY   **BRENT**   STATE **AL**

8. PATIENT STATUS
Single   Married   Other X
Employed   Full-Time Student   Part-Time Student

CITY   STATE

ZIP CODE   TELEPHONE (Include Area Code)
(   )

ZIP CODE   TELEPHONE (INCLUDE AREA CODE)
(   )

9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER
**NONE**

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (CURRENT OR PREVIOUS)
YES   X NO

a. INSURED'S DATE OF BIRTH
MM   DD   YY   SEX
M   F

b. OTHER INSURED'S DATE OF BIRTH   SEX
MM   DD   YY   M   F

b. AUTO ACCIDENT?   PLACE (State)
YES   X NO

b. EMPLOYER'S NAME OR SCHOOL NAME

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT?
YES   X NO

c. INSURANCE PLAN NAME OR PROGRAM NAME

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?
YES   X NO   If yes, return to and complete item 9 a-d.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.
12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED   **SIGNATURE ON FILE**   DATE   **01232006**

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.
SIGNED   **SIGNATURE ON FILE**

| 14. DATE OF CURRENT ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY(LMP) MM DD YY | 15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS. GIVE FIRST DATE MM DD YY | 16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION MM DD YY FROM TO MM DD YY |
|---|---|---|

17. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE

17a. I.D. NUMBER OF REFERRING PHYSICIAN

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES
MM DD YY   MM DD YY
FROM   TO

19. RESERVED FOR LOCAL USE

20. OUTSIDE LAB?   $ CHARGES
YES   NO

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY (RELATE ITEMS 1,2,3 OR 4 TO ITEM 24E BY LINE)

1. **366.19**
2.
3. **361.06**
4.

22. MEDICAID RESUBMISSION
CODE   ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER
**15714946**

| 24. A. DATES OF SERVICE From MM DD YY | To MM DD YY | B. Place of Service | C. Type of Service | D. PROCEDURES, SERVICES OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS | MODIFIER | E. DIAGNOSIS CODE | F. $ CHARGES | G. DAYS OR UNITS | H. EPSDT Family Plan | I. EMG | J. COB | K. RESERVED FOR LOCAL USE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01232006 | 01232006 | 11 | 1 | 92004 | | 1,2 | 131 00 | 1 | | | | |
| 01232006 | 01232006 | 11 | 1 | 92015 | | 1,2 | 25 00 | 1 | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

25. FEDERAL TAX I.D. NUMBER   SSN   EIN
**63-0637131**   X

26. PATIENT'S ACCOUNT NO.
**27461**

27. ACCEPT ASSIGNMENT? (For govt. claims, see back)
X YES   NO

28. TOTAL CHARGE
$ **156 00**

29. AMOUNT PAID
$

30. BALANCE DUE
$ **156 00**

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)

SIGNED   **01242006**   DATE

32. NAME AND ADDRESS OF FACILITY WHERE SERVICES WERE RENDERED (If other than home or office)
**DR JOHN ALLEN JONES**
**2055 E S BLVD STE 804**
**MONTGOMERY AL**
**36116**

33. PHYSICIAN'S, SUPPLIER'S BILLING NAME, ADDRESS, ZIP CODE & PHONE #
**DR JOHN ALLEN JONES**
**2055 EAST SOUTH BLVD # 804**
**MONTGOMERY, AL   36116**
PIN# **C75192**   GRP# **03292**

(APPROVED BY AMA COUNCIL ON MEDICAL SERVICE 8/88)   **PLEASE PRINT OR TYPE**
APPROVED OMB-0938-0008 FORM CMS-1500 (12-90)   FORM RRB-1500.
APPROVED OMB-1215-0055 FORM OWCP-1500   APPROVED OMB-0720-0001 (CHAM

APPROVED OMB 0938-0008

PLEASE
DO NOT
STAPLE
IN THIS
AREA

PRISON HEALTH CARE
PO BOX 967
BRENTWOOD TN
37027

## HEALTH INSURANCE CLAIM FORM

PICA | | | | | | | | PICA

| MEDICARE | MEDICAID | CHAMPUS | CHAMPVA | GROUP HEALTH PLAN | FECA BLK LUNG | OTHER | 1a. INSURED'S I.D. NUMBER (FOR PROGRAM IN ITEM 1) |
|---|---|---|---|---|---|---|---|
| (Medicare #) | (Medicaid #) | (Sponsor's SSN) | (VA File #) | (SSN or ID) | (SSN) | X (ID) | 134871 |

2. PATIENT'S NAME (Last Name, First Name, Middle Initial)
LANDRUM, JOHNNY

3. PATIENT'S BIRTH DATE  MM DD YY  03031956  M X  F  SEX

4. INSURED'S NAME (Last Name, First Name, Middle Initial)
LANDRUM, JOHNNY

5. PATIENT'S ADDRESS (No., Street)
565 BIBB LANE

6. PATIENT RELATIONSHIP TO INSURED
Self X  Spouse  Child  Other

7. INSURED'S ADDRESS (No., Street)
SAME

CITY
BRENT

STATE
AL

8. PATIENT STATUS
Single  Married  Other X

CITY | STATE

ZIP CODE | TELEPHONE (Include Area Code)
( )

Employed  Full-Time Student  Part-Time Student

ZIP CODE | TELEPHONE (INCLUDE AREA CODE)
( )

9. OTHER INSURED'S NAME (Last Name, First Name, Middle Initial)

10. IS PATIENT'S CONDITION RELATED TO:

11. INSURED'S POLICY GROUP OR FECA NUMBER
NONE

a. OTHER INSURED'S POLICY OR GROUP NUMBER

a. EMPLOYMENT? (CURRENT OR PREVIOUS)
YES  X NO

a. INSURED'S DATE OF BIRTH  MM DD YY  M  F  SEX

b. OTHER INSURED'S DATE OF BIRTH  MM DD YY  M  F  SEX

b. AUTO ACCIDENT?  YES  X NO  PLACE (State)

b. EMPLOYER'S NAME OR SCHOOL NAME

c. EMPLOYER'S NAME OR SCHOOL NAME

c. OTHER ACCIDENT?  YES  X NO

c. INSURANCE PLAN NAME OR PROGRAM NAME

d. INSURANCE PLAN NAME OR PROGRAM NAME

10d. RESERVED FOR LOCAL USE

d. IS THERE ANOTHER HEALTH BENEFIT PLAN?
YES  X NO  If yes, return to and complete item 9 a-d.

READ BACK OF FORM BEFORE COMPLETING & SIGNING THIS FORM.
12. PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE I authorize the release of any medical or other information necessary to process this claim. I also request payment of government benefits either to myself or to the party who accepts assignment below.

SIGNED SIGNATURE ON FILE   DATE 01232006

13. INSURED'S OR AUTHORIZED PERSON'S SIGNATURE I authorize payment of medical benefits to the undersigned physician or supplier for services described below.

SIGNED SIGNATURE ON FILE

14. DATE OF CURRENT  MM DD YY  ILLNESS (First symptom) OR INJURY (Accident) OR PREGNANCY(LMP)

15. IF PATIENT HAS HAD SAME OR SIMILAR ILLNESS GIVE FIRST DATE  MM DD YY

16. DATES PATIENT UNABLE TO WORK IN CURRENT OCCUPATION  MM DD YY  FROM  TO

17. NAME OF REFERRING PHYSICIAN OR OTHER SOURCE
JOHN ALLEN JONES, III

17a. I.D. NUMBER OF REFERRING PHYSICIAN
C75192

18. HOSPITALIZATION DATES RELATED TO CURRENT SERVICES  MM DD YY  FROM  TO

19. RESERVED FOR LOCAL USE

20. OUTSIDE LAB?  YES  NO  $ CHARGES

21. DIAGNOSIS OR NATURE OF ILLNESS OR INJURY. (RELATE ITEMS 1,2,3 OR 4 TO ITEM 24E BY LINE)
1. 366.19
2.
3.
4.

22. MEDICAID RESUBMISSION CODE  ORIGINAL REF. NO.

23. PRIOR AUTHORIZATION NUMBER
15878465

| 24. A DATE(S) OF SERVICE | | | | | B Place of Service | C Type of Service | D PROCEDURES SERVICES OR SUPPLIES (Explain Unusual Circumstances) CPT/HCPCS | MODIFIER | E DIAGNOSIS CODE | F $ CHARGES | G DAYS OR UNITS | H EPSDT Family Plan | I EMG | J COB | K RESERVED FOR LOCAL USE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| From MM DD YY | | To MM DD YY | | | | | | | | | | | | | |
| 06072006 | | 06072006 | | | 22 | 2 | 66984 | LT | 1 | 650 00 | 1 | | | | |

25. FEDERAL TAX I.D. NUMBER  SSN EIN
63-0637131  X

26. PATIENT'S ACCOUNT NO.
27461

27. ACCEPT ASSIGNMENT? (For govt. claims, see back)
X YES  NO

28. TOTAL CHARGE
$ 650 00

29. AMOUNT PAID
$

30. BALANCE DUE
$ 650 00

31. SIGNATURE OF PHYSICIAN OR SUPPLIER INCLUDING DEGREES OR CREDENTIALS (I certify that the statements on the reverse apply to this bill and are made a part thereof.)

SIGNED  06072006  DATE

32. NAME AND ADDRESS OF FACILITY WHERE SERVICES WERE RENDERED (If other than home or office)
BAPTIST SURGERY CENTER
2055 ES BLVD
MONTGOMERY AL
36116

33. PHYSICIAN'S SUPPLIER'S BILLING NAME, ADDRESS, ZIP CODE & PHONE #
DR JOHN ALLEN JONES, III
2055 EAST SOUTH BLVD # 804
MONTGOMERY, AL  36116
C75192  .03292
PIN#  GRP#

APPROVED BY AMA COUNCIL ON MEDICAL SERVICE 8/88   PLEASE PRINT OR TYPE

APPROVED OMB-0938-0008 FORM CMS-1500 (12-90),  FORM RRB-1500,
APPROVED OMB-1215-0055 FORM OWCP-1500   APPROVED OMB-0720-0001 (CHA

STATEMENT

**DRS. JONES & JONES, P.A.**
2055 EAST SOUTH BLVD.
SUITE 804
MONTGOMERY, AL 36116

334-225-0121

27461

INMATE

LANDRUM, JOHNNY
565 BIB LANE
BRENT, AL

| DATE | REFERENCE | DESCRIPTION | CHARGES | PYMNTS | JTS ADJ | BALANCE |
|------|-----------|-------------|---------|--------|---------|---------|
| 1/23/06 | TU | CE of acct | 1,356.00 | | 1,341.04 | 1,356.00 |
| 3/31/06 | | P/S 123.07 | | | 7,156.00 | 7,156.00 |
| 6/1/06 | TH | Pr-op 43700 | NC | 97,358.98 | | |
| 6/7/06 | TU | 66984 surg | 650.00 | | | 650.00 |
| 6/7/06 | TU | 5 Fu | NC | | | 6.00 |
| 6/30/06 | TU | 5 Fu | NC | 650.53 | 13.44 | 650.00 |
| 7/31/06 | | P/S 6/7/06 | | | | |
| 8/31/06 | | 5 Fu | NC | | | |

MBP-701
CREATIVE BUSINESS SYSTEMS INC. 334-281-1316     LITHO IN U.S.A.     PLEASE PAY LAST AMOUNT IN THIS COLUMN ▲

THIS IS A COPY OF YOUR ACCOUNT AS IT APPEARS ON OUR RECORDS

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNNY LANDRUM,                          §
                                         §
     Plaintiff,                          §
                                         §
v.                                       §     2:07-cv-495-WKW
                                         §
DR. JOHN ALLEN JONES, et al.,            §
                                         §
     Defendants.                         §

## AFFIDAVIT OF JOHN ALLEN JONES, III, M.D.

STATE OF ALABAMA          )

COUNTY OF MONTGOMERY    )

BEFORE ME, _NANcy M°GLOTHREN_ notary public in and for said County and State, personally appeared JOHN ALLEN JONES, III, M.D., and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is John Allen Jones, III. I am a medical doctor and am over nineteen (19) years of age. I am personally familiar with all the facts contained herein and base my opinions on my education, training, experience, and knowledge of this case. I have been licensed as a physician in Alabama since 1977, and have been board certified as a Fellow with the American Board of Ophthalmology since 1978. I am currently employed as the President of Drs Jones & Jones. P.A. in Montgomery, Alabama. I am not employed by Baptist Medical Center South, Prison Health Services, Inc. or the Alabama Department of Corrections.

It is my understanding that Johnny Landrum (AIS # 134871) is an inmate currently incarcerated at Bibb County Correctional Facility located in Brent, Alabama. On January 23, 2006, Mr. Landrum presented to my office for an eye examination with complaints of decreased vision in the left eye with cataract, gradual decreasing vision in the right eye, and occasional "floaters" without flashes. Mr. Landrum communicated a medical history that was significant for a surgically repaired detached retina in the left eye, high myopia, as well as high blood pressure and an unspecified back injury.

In evaluating Mr. Landrum I determined that he had 20/40[1] best corrected vision in the right eye corrected and very poor "count fingers" vision in the left eye at five (5) feet, approximately 20/1600 corrected.[2] The lens of the right eye was clear; the lens of the left eye was found to be markedly dark and opaque due to the presence of a 3+ cataract. Both retinas remained attached per initial evaluation. Based upon the initial evaluation, I recommended a phacoemulsification procedure to remove the cataract from the left eye.[3] Mr. Landrum was instructed to return for evaluation via A-scan ultrasound in preparation for surgical placement of an intraocular lens implant (IOL).[4]

On June 1, 2006, Mr. Landrum received an A-scan. The A-scan showed that Mr. Landrum's left eye was extremely long as related to normal, to the order of -1.0 (compared to normal of +20.0). I subsequently ordered a specially designed -1 powered IOL in preparation for the phacoemulsification procedure.

---

[1] When a patient's vision is 20/40, that means that when they are standing or sitting 20 feet away from the eye chart they can only see letters (or numbers) on the chart that are large enough for a person with normal vision to see 40 feet away (the 20/40 line). The higher the second number (such as 20/100, 20/200, 20/400), the worse is the person's eyesight.

[2] It is common to record vision worse than 20/400 as "count fingers" (CF at a certain number of feet).

[3] Phacoemulsification is a surgical procedure whereby a microscopic instrument is passed through a small incision toward the lens and ultrasound is used to break the cataract into small pieces which are subsequently extracted. Once the cataract is removed a replacement lens is inserted.

[4] A-scan ultrasound biometry (commonly referred to as an A-scan) is a routine diagnostic test used to determine the length of the eye for calculation of intraocular lens power.

On June 7, 2006, Mr. Landrum presented for surgery. He was prepped and draped in the usual manner for a left intraocular procedure. At that time I determined that that the cataractous left lens was dislocated inferiorly and temporally from its zonules (supporting structure). Due to the fragile nature of the support system holding the lens in place, the phacoemulsification procedure was abandoned in favor of an extracapsular cataract extraction and insertion of an anterior chamber intraocular lens. The specialty ordered lens could not be used.

The anterior chamber was entered and the lowest powered anterior chamber lens available (+16) was inserted and securely placed. Mr. Landrum tolerated the procedure well with no formed vitreous loss. He was returned to the recovery room in good condition. Mr. Landrum was discharged with appropriate post-operative instructions and prescriptions for Zymar 0.3 % (an ophthalmic antibacterial solution) and Econopred (an ophthalmic corticosteroid) which were written KOP for Mr. Landrum's convenience. Mr. Landrum was also provided education materials and instructions for appropriate post-operative care.

I evaluated Mr. Landrum post-operatively on June 29, 2006. On that date Mr. Landrum stated that the left surgical eye felt good. His post-operative evaluation was normal. I noted that he had exhausted his prescription for Zymar and was continuing with Econopred as prescribed.

Mr. Landrum again presented on August 10, 2006 when it was noted that that he had exhausted his supply of Econopred and was having some glare, double vision and discomfort under the left upper lid. In response, I prescribed Tobradex.[5] I also evaluated

---

[5] Tobradex ( Tobramycin and dexamethasone ophthalmic suspension and ointment) are multiple dose antibiotic and steroid combinations for topical ophthalmic use.

3

the surgical eye and noted the existence of a number of old tears (breaks) in the retinal posterior pole, a chronic condition that negatively effects the manner in which light spreads across the retina and precludes good vision.

Mr. Landrum's vision in the left surgical eye has dramatically improved from "counting fingers" vision at five (5) feet (approximately 20/1600) to 20/200 ambulatory vision with the anterior chamber lens. The overall potential for improvement in Mr. Landrum's vision is, of course, limited by the negative effects of his chronic retinal degeneration.

I understand that Mr. Landrum has made an allegation in this case that I placed a lens in his left eye during surgery that was ordered for another inmate's use. This allegation is simply untrue as the lens utilized during Mr. Landrum's surgical procedure was chosen for his specific need. Further, in contradiction to Plaintiff's allegations, I have never instructed him that he would not have to wear eyeglasses after the surgical procedure. Mr. Landrum will always rely on corrective lenses for best improved vision due to his chronic retinal degeneration and excess myopia.

Based on my review of Mr. Landrum's medical records and on my personal knowledge of the treatment provided to him, it is my opinion that his ocular conditions and complaints have been evaluated and treated in a timely and appropriate fashion. At all times, I have exercised the same degree of care, skill, and diligence as other similarly situated health care providers would have exercised under the same or similar circumstances. In other words, it is my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate

4

At no time have I denied Mr. Landrum any needed medical treatment, nor have I ever acted with deliberate indifference to any serious medical need of Mr. Landrum. At all times, Mr. Landrum's medical complaints and conditions have been addressed as promptly as possible under the circumstances."

Further affiant sayeth not

John Allen Jones, III, M.D

STATE OF ALABAMA                )
                                )
COUNTY OF MONTGOMERY            )

Sworn to and subscribed before me on this the 4th day of DECEMBER 2007

Nancy L. Mc Glothren
Notary Public
MyCommissionExpires

NANCY L. McGLOTHREN
Notary Public, AL State at Large
My Comm. Expires Jan. 14, 2008

5