IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | | |
|---|---|---|
| JOHNNY LANDRUM, | * | |
| Plaintiff, | * | |
| v. | * | 2:07-CV-495-WKW |
| | | (WO) |
| DR. JOHN ALLEN JONES, | * | |
| Defendant. | * | |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Defendant, Dr. John Jones, removed this 42 U.S.C. § 1983 action to this court on June 6, 2007 pursuant to the provisions of 28 U.S.C. § 1441(a) and (b). Plaintiff, Johnny Landrum, originally filed the complaint in the Circuit Court for Montgomery County, Alabama, on January 22, 2007 during his incarceration at the Bibb County Correctional Facility located in Brent, Alabama.[1] Plaintiff requests trial by jury and seeks damages against Dr. Jones with respect to his allegation that the defendant subjected him to inadequate medical care and treatment in violation of his Eighth Amendment rights.

Dr. Jones filed an answer, special report, and supporting evidentiary materials addressing Plaintiff's claims for relief. Pursuant to previous orders of this court, the undersigned deems it appropriate to treat this report as a motion for summary judgment. (*See Doc. No. 25*.) Thus, this case is now pending on Dr. Jones' motion for summary judgment.

---

[1]During the pendency of this action Plaintiff was released from custody.

Upon consideration of the motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition to the motion, the court concludes that Dr. Jones' motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); FED. R. CIV. P. 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element

---

[2]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Defendant has met his evidentiary burden and demonstrated the absence of any genuine issue of material fact. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to each of his claims for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive Defendant's properly supported motion for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or

is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (a plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require

submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material

fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II. DISCUSSION

*A. The Eighth Amendment Claim*

Plaintiff and another inmate, M.C. Siler, were transported to Baptist Hospital in Montgomery, Alabama, on June 7, 2007 for cataract surgery. In preparation for surgery, Plaintiff underwent a blood pressure check, an E.K.G., and placement of an intravenous line, and he received drops for the surgical eye. Prior to surgery, Plaintiff was asked to state his name, birthdate, and prison identification number. He contends, however, that no one checked his hospital identification band. During the surgical procedure, Plaintiff heard someone say "that is Johnny not Siler." Shortly thereafter Dr. Jones informed Johnny that the surgery was finished. Following the surgery, Plaintiff found his "lenses w[ere] foggy, blurred." Dr. Jones put some drops in Plaintiff's eyes, which is when Plaintiff maintains he

6

knew the physician had put the wrong lenses in his eyes. (*Doc. Nos. 1, 17*.)

Plaintiff returned to Dr. Jones' office the next day. When asked to read a wall chart, Plaintiff informed Dr. Jones that he could not see anything but a bright light. Dr. Jones provided Plaintiff with various eye drops and a pair of sunglasses and directed Plaintiff to return for a check up within two weeks. At the follow up visit, Plaintiff asserts that Dr. Jones made jokes about his eyes and indicated that the lenses he had ordered for Plaintiff would not fit his eyes. (*Doc. Nos. 1, 17*.)

Plaintiff brings this action claiming that the medical treatment he received from Dr. Jones amounted to deliberate indifference to his serious medical needs because the physician mistakenly put the lense meant for inmate Siler in Plaintiff's left eye. This "mix up," Plaintiff alleges, has resulted in continuous eye pain as well as vision loss. (*Doc. Nos. 1, 17*.)

To prevail on a claim concerning an alleged denial of adequate medical treatment in violation of the Eighth Amendment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his health. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."). When seeking relief based on deliberate indifference of correctional medical personnel, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an

actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Consequently, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical

8

>     malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995).

>     To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind." ' " *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  Thus, to survive summary judgment on his claim of deliberate indifference, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) Defendant's deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

Dr. Jones is board certified ophthalmologist in private practice with Drs. Jones & Jones, P.A., located in Montgomery, Alabama.  At all times relevant to this cause of action, Dr. Jones was under contract with the prison healthcare provider, Prison Health Services, Inc., to provide healthcare to inmates in correctional facilities located in Alabama, including

the Bibb Correctional Facility.[3] (*Doc. No. 22, Jones Affidavit; see also Doc. No. 7 (\*sealed\*).*)

In December 2005 medical personnel at the Bibb County Correctional Facility referred Plaintiff to Dr. Jones for evaluation for possible cataract surgery. Dr. Jones initially evaluated Plaintiff on January 23, 2006 for his complaints of decreased vision in his left eye with cataract, decreasing vision in his right eye, and occasional "floaters" without flashes. Plaintiff informed Dr. Jones of his medical history, which was significant for a surgically repaired detached retina in the left eye, high myopia, as well as high blood pressure and an unspecified back injury. Based on his initial observation, Dr. Jones found Plaintiff's "count fingers" vision in the left eye to be very poor.[4] He also found the lens of Plaintiff's right eye to be clear while the left lens appeared markedly dark and opaque due to the presence of a cataract. Dr. Jones states that at the January 2006 evaluation, both of Plaintiff's retinas were attached. Based on the initial evaluation, Dr. Jones recommended a phacoemulsification procedure to remove the cataract from Plaintiff's left eye.[5] (*Doc. No. 22, Medical Records,*

---

[3]An essential element of a 42 U.S.C. § 1983 action is that the alleged constitutional deprivation was committed by a person acting under color of state law or a person whose conduct is fairly attributable to the State. *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40 (1999); *Parratt v. Taylor*, 451 U.S. 527 (1981); *Willis v. University Health Services, Inc.*, 993 F.2d 837, 840 (11th Cir. 1993). A private physician who contracts with the state to provide medical care for inmates acts under color of state law. *See West v. Atkins*, 487 U.S. 42, 54 (1988); *Farrow v. West*, 320 F.3d 1235, 1239 n.3 (11th Cir. 2003); *Carswell v. Bay County*, 854 F.2d 454, 456-57 (11th Cir. 1988); *Ort v. Pinchback*, 786 F.2d 1105, 1107 (11th Cir. 1986).

[4]Dr. Jones states that it is common to record vision worse than 20/400 as "count fingers." *(Doc. No. 22, Jones Affidavit n.2.)*

[5]Phacoemulsification is the term for the surgical procedure used to remove/extract a cataract and insert a replacement lens into the eye. (*See Doc. No. 22, Jones Affidavit at pg. 2 n.3.*)

*Jones Affidavit.*)

On June 1, 2006 Plaintiff received an A-scan in preparation for his cataract surgery. The A-scan revealed that Plaintiff's left eye was extremely long compared with normal. Dr. Jones ordered a specially designed -1 powered IOL (intraocular lens) in preparation for the phacoemulsification procedure. (*Doc. No. 22, Medical Records, Jones Affidavit.*)

Plaintiff presented for surgery on June 7, 2006. Upon prepping Plaintiff for surgery in the usual manner, Dr. Jones determined that his affected left lens was dislocated inferiorly and temporally from its zonules (supporting structure). Due the fragile nature of the support system holding Plaintiff's cataractous lens in place, Dr. Jones performed an extracapsular cataract extraction and insertion of an anterior chamber intraocular lense rather than the phacoemulsification procedure.[6] Dr. Jones inserted and secured the lowest powered anterior chamber lens available into Plaintiff's left eye with adjustments to be made as necessary. Following the surgery, Plaintiff was returned to the recovery room in good condition. Dr. Jones discharged Plaintiff with post-operative instructions, educational material, and various ophthalmic prescriptions which he was allowed to keep on his person (KOP). (*Doc. No. 22, Medical Records, Jones Affidavit.*)

At a follow-up visit on June 29, 2006, Dr. Jones found Plaintiff's post-operative

---

[6]Extracapsular cataract extraction (ECCE) is a category of eye surgery in which the lens of the eye is removed while the elastic capsule that covers the lens is left partially intact to allow implantation of an intraocular lens (IOL). There are two major types of ECCE: manual expression, in which the lens is removed through an incision made in the cornea or the sclera of the eye; and phacoemulsification, in which the lens is broken into fragments inside the capsule by ultrasound energy and removed by aspiration. *At* http://www.surgeryencyclopedia.com/Ce-Fi/Extracapsular-Cataract-Extraction.html.

evaluation normal and states that Plaintiff indicated that his surgical eye felt good. Dr. Jones evaluated Plaintiff again on August 10, 2006 and noted Plaintiff's assertions of having some glare, double vision, and discomfort under the left upper lid. Dr. Jones prescribed a topical ophthalmic suspension and ointment containing an antibiotic/steroid combination for Plaintiff's complaints. Dr. Jones also noted the existence of several old tears (breaks) in Plaintiff's surgical eye in the retinal posterior pole, a chronic condition that negatively effects the manner in which light spreads across the retina and precludes good vision. (*Doc. No. 22, Medical Records, Jones Affidavit*.)

The evidentiary materials submitted by Dr. Jones demonstrate without dispute that Plaintiff received medical care for his eye condition. Dr. Jones performed the procedure that he deemed most appropriate to the specific needs and condition of Plaintiff's left eye at the time of surgery. Although Plaintiff argues that Dr. Jones implanted an incorrect lens in his left eye, nothing in the record supports this claim. Rather, the undisputed records reflect that Dr. Jones adequately and properly addressed Plaintiff's medical condition. While Plaintiff asserts that he underwent corrective surgery seventeen months after the surgery performed by Dr. Jones, he fails to provide any medical evidence establishing that he suffered any detrimental effect as a result of Dr. Jones' actions or that this defendant in any way disregarded a substantial risk to his health by the manner in which he provided treatment for Plaintiff's condition. *See generally Farrow*, 320 F.3d 1235. It is clear that Plaintiff's disagreement is with the efficacy of his treatment. Plaintiff's desire for different or additional treatment, however, does not establish a constitutional violation. *Hamm v. DeKalb County*,

774 F.2d. 1567, 1575 (11th Cir. 1985). At best, Plaintiff provides the court with no more than his own unsubstantiated beliefs and opinions about the quality of the medical care he received. Such unsupported beliefs and opinions are insufficient to create a genuine issue of fact in this case. Plaintiff's failure to verify his claim with medical or scientific evidence is fatal to that claim.

The court finds that Plaintiff has failed to establish that his constitutional rights were violated by Dr. Jones. Plaintiff has come forward with no evidence that Dr. Jones knew that the manner in which he treated Plaintiff created a substantial risk to him and that he disregarded that risk. *Farmer*, 511 U.S. at 837. It is undisputed that Plaintiff received medical treatment for his complaints and that he was provided access to follow-up care with Dr. Jones. Plaintiff has not shown by medical evidence consistent with FED. R. CIV. P. 56(e), that the treatment he received was so deficient as to amount to deliberate indifference in violation of the Eighth Amendment. Nor has Plaintiff shown that Dr. Jones' treatment decisions reflected a substantial departure from accepted professional judgment, practice, or standards which tends to show that he did not make decisions based on such judgments. *See Youngberg v. Romeo*, 457 U.S. 307, 323 (1982). Consequently, Plaintiff has failed to establish a genuine issue about deliberate indifference on the part of Dr. Jones. In the absence of such a showing by Plaintiff, Dr. Jones' motion for summary judgment is due to be granted.

## B. *The Exercise of Supplemental Jurisdiction*

Plaintiff complains that the medical care and treatment provided to him by Dr. Jones

implicates the state tort of medical malpractice. Review of such a claim is only appropriate upon exercise of this court's supplemental jurisdiction. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). In the posture of this case, however, the exercise of such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, 'the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact."'" *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984). The exercise of supplemental jurisdiction is discretionary. *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428. In view of this court's resolution of the federal claim presented in the complaint, Plaintiff's supplemental state tort claim is due to be dismissed. *Gibbs,* 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment filed by Defendant Jones (*Doc. No. 22*) be GRANTED with respect to Plaintiff's federal claim;

2. Plaintiff's pendent state law claim be DISMISSED without prejudice;

      3.   Judgment be GRANTED in favor of Defendant and against Plaintiff;

      4.   This case be DISMISSED with prejudice; and

      5.  The costs of this proceeding be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that on or before **December 7, 2009** the parties may file objections to the Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 23rd day of November, 2009.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE